## LEHI CITY v. MEILING, City Recorder.

No. 5676. Decided July 16, 1935. (48 P. [2d] 530.)

238

*A. V. Watkins* and *R. Holbrook,* both of Provo, *Fisher Harris* and *Grant Macfarlane,* both of Salt Lake City, and A. J. *Evans,* of Lehi, for plaintiff.

*Ingebretsen, Ray, Rawlins & Christensen,* of Salt Lake City, for defendant.

FOLLAND, Justice.

This is an original proceeding in this court to test the validity of the Metropolitan Water District Act. Lehi City, a municipal corporation, applied for a writ of mandate directed to the defendant as city recorder of Lehi City, requiring him, in his official capacity, to cause to be transmitted forthwith by registered mail to the chief executive officer of each of the cities and towns named therein a certified copy of an ordinance enacted by the city council of Lehi City April 9, 1935, and which became effective April 11, 1935, entitled:

"An ordinance of Lehi City declaring that public convenience and necessity require the incorporation of a metropolitan water district, naming the cities proposed to be included therein, fixing the estimated cost of incorporation, and organizing the proposed district, and apportioning such cost among the municipalities proposed to be included within such district."

It is alleged this was a duty specifically enjoined on the defendant by the ordinance and by statute, but that the defendant has refused to transmit such ordinance forthwith, or at all, to the chief executive officer of the cities of Pleasant Grove and Midvale and the towns of Lindon, Orem, and Sandy, the cities and towns other than Lehi City named in the ordinance, and that he has based his refusal on the ground that the provisions of the statute under and pursuant to which the city council of Lehi City had passed the ordinance, known as the Metropolitan Water District Act, Laws Utah 1935, c. 110, p. 204, is void as in violation of the Constitutions of the State of Utah and of the United States.

An alternative writ of mandate was issued by this court. Defendant showed cause by filing a general demurrer to the petition. The cause is now before us on petition of plaintiff, demurrer of defendant, and briefs and oral arguments of the attorneys representing the respective parties. We are required to determine whether or not the Metropolitan Water District Act is a valid and constitutional law. The title to the act is as follows:

"An Act Providing for the Incorporation, Government and Management of Metropolitan Water Districts, Authorizing Such Districts to Incur Bonded Debt and to Acquire, Construct, Operate and Manage Works and Property, Providing for the Taxation of Property Therein and the Performance of Certain Functions Relating Thereto by Officers of Counties, Providing for the Addition of Area Thereto and the Exclusion of Area Therefrom and Authorizing Municipal Corporations to Aid and Participate in the Incorporation of Such Districts."

The act provides for the organization of Metropolitan Water Districts for the purpose of acquiring, appropriating, developing, storing, selling, leasing, and distributing water for, and devoting water to, municipal and domestic purposes, irrigation, power, milling, manufacturing, mining, metallurgical, and any and all other beneficial uses, which districts may be formed of the territory "included within the corporate boundaries of any one or more municipalities, which need not be contiguous." Section 3. The term "municipality" as used in the act is deemed to mean and include any incorporated city and town in the state of Utah. Section 2. The district when incorporated "shall be a separate and independent political corporate entity" and shall have and exercise such powers as are expressly granted by the act "together with such powers as are reasonably implied herefrom and necessary and proper to carry out the objects and purposes of such incorporated districts." Section 3. The act provides the method of inception, organization, and incorporation of such districts as follows:

"Such metropolitan water district shall be organized and incorporated in the following manner:

"The legislative body of any municipality may pass an ordinance declaring that the public convenience and necessity require the incorporation of a metropolitan water district, which ordinance shall state: (1) that it is proposed to incorporate a metropolitan water district under the provisions of this act; (2) the name or names of the city or cities proposed to be included within the district to be incorporated; (3) the name of the proposed district; (4) if the district is to comprise more than one city an estimate of the preliminary costs and expenses of incorporating and organizing the proposed district and an apportionment of such costs and expenses among the several muni-

cipalities proposed to be included within such district. Such apportionment shall be substantially in accordance with population as shown by the most recent federal census." Section 4.

On the taking effect of the initiatory ordinance, the clerk of the legislative body of such initiating city or town is required to "forthwith transmit a certified copy thereof by registered mail to the chief executive officer of each of the other municipalities named therein." Within 60 days after receipt of a certified copy of such ordinance by any municipality named therein, the legislative body shall approve or reject such ordinance without alteration or amendment. Failure to act within such time is deemed a rejection of the ordinance. Each municipality approving the ordinance shall promptly pay over to the initiating municipality its share of the preliminary cost of any expenses of the incorporation and organization of the district. Within 120 days, but not until each municipality named shall have acted on the ordinance, or the 60-day period for action has expired, the legislative bodies of all the municipalities within the proposed district shall call for the holding of a special election, at which election the proposition of the corporation of such Metropolitan Water District shall be submitted to the electors residing within such municipalities for ratification or rejection. The ordinance calling such election must contain the date relating to the election as specifically set forth in the act. Such election may be held separately or may be held concurrently with any other election authorized by law. The result of the election in each city must be certified by a canvassing body to the governing body of the initiating city, and the governing body of the initiating city must certify to the secretary of state the proceedings had together with the result of the election in the cities or towns voting affirmatively. To be effective the total assessed valuation of the approving cities must be not less than two-thirds of the total assessed valuation within the district as originally proposed. The secretary of state thereupon must issue a certi-

ficate of incorporation naming the municipality or municipalities of which the district shall be composed.

Section 18 of the act provides with much detail the powers with which the incorporated district and its officers are vested. It has the power of perpetual succession, to sue and be sued, to adopt a corporate seal, to have the same powers, rights, and privileges of eminent domain as a municipal corporation; to construct and maintain works in streets, highways, and public lands on stated conditions; to make contracts, employ officers, attorneys, agents, and employees; to buy, sell, lease, and hold property of all kinds, including water and water rights; to incur debts, borrow money, and issue bonds, and to invest surplus moneys, to co-operate with other corporations, to incur joint and several obligations, and to levy and collect taxes.

The exercise of such powers, privileges, and duties is, by the terms of the act, to be intrusted to and performed by and through a board of directors which shall consist of at least one representative from each municipality where two or more municipalities compose a district, the vote of the members of the board to be on the basis of assessed valuation of taxable property for district purposes in the city or town represented by him. Any city or town may at its option designate several representatives, but such representatives shall cast the vote to which such city or town would otherwise be entitled as a majority shall determine.

Before any indebtedness or obligation in excess of the annual income or revenue of the district is incurred, the proposition to create such indebtedness must be submitted to a vote of the qualified electors who shall have paid a property tax in the year preceding such election, and such debt or obligation may be incurred only after a majority of such electors have voted in favor thereof, and in no event may the district become indebted to a sum which in the aggregate shall exceed 10 per cent of the value of the taxable property therein. Any tax which may be levied is limited to 25 cents on each $100 of assessed valuation in

addition to any tax levied to meet bonded indebtedness and interest on indebtedness or interest owing to the United States by the district or for the payment of which the district shall be liable. Within such limits the district may levy in any year a tax sufficient to cover any deficit that may have resulted from delinquencies in any preceding year.

On this hearing we are concerned merely with such questions as arise upon the threshold of the formation of the proposed district initiated by Lehi City and with those considerations which involve the constitutionality of the act itself as distinguished from the validity of particular portions thereof, or the exercise of particular powers by the district or its officers after incorporation and in the course of operation.

Counsel for both sides are insistent that the objections urged by defendant against the validity of the act, and fully argued by counsel, are such as inhere in the act and should be decided before the cities and towns included within the proposed district are required to incur the expense of elections to be held in the municipalities involved. The matter is of great public importance not only to the people residing in the towns and cities included in the proposed district, but as well to those of other cities who might contemplate action under the Metropolitan Water District Act. We shall consider all the questions properly raised by this form of action.

No objections are made to the proceedings so far had under the act. They are in substantial conformity with its provisions. The attack is made on the act itself, that its enactment is beyond the scope of legislative power under the terms and provisions and implications of the Constitutions of this state and of the United States.

The act is patterned after, for the most part, the Metropolitan Water District Act of California adopted in 1927, St. 1927, c. 429, p. 694, and later amended, St. 1929, c. 796, p. 1613, St. 1931, c. 323, p. 814, St. 1933, c. 507, p. 1289. The validity of that act was sustained by the Supreme Court

of California in 1927. *City of Pasadena* v. *Chamberlain*, 204 Cal. 653, 269 P. 630, 634. We shall have occasion to refer to this case again because many of the objections now urged against the validity of the Utah act are the same as were urged in the Pasadena Case, although several questions raised in this present case are not decided in the Pasadena Case because of differences in the acts and constitutional provisions. More recently the California court has approved the validity of bonds issued by a Metropolitan Water District. *Metropolitan Water District of Southern California* v. *Burney*, 215 Cal. 582, 11 P. (2d) 1095; *Metropolitan Water District of Southern California* v. *Toll*, 1 Cal. (2d) 421, 35 P. (2d) 519.

The Metropolitan Water District Act was adopted by California because of the need of a corporate entity which could contract with the United States government for a large and expensive water supply to be made possible by the reclamation project on the Colorado river at Boulder Dam. The project was of such magnitude and the need for water by many cities so great that it was impracticable, if not impossible, for any one of the cities to undertake the project alone. Provision therefore was made for concerted action on the part of the municipalities through a new and different corporation by means of which many cities and towns could co-operate in obtaining an increased water supply. A similar need exists in this state. The United States government has planned a reclamation project involving the building of dams, reservoirs, tunnels, and canals for the purpose of storing water from the Weber, Duchesne, and Provo rivers, and to make such waters available for the cities, towns, and irrigators in Salt Lake and Utah counties. Because of the magnitude of the project, its success depends on the united resources and efforts of the cities, towns, and other water users within the area which can be served. The passage of the Metropolitan Water District Act was in furtherance of an effort on the part of the Legislature to provide means by which these communities may contract with

the United States government to obtain a larger supply of water, through the proposed reclamation scheme, for use by the inhabitants of the cities and towns under the project, and for the farmers who need additional water for irrigation. With the merits of the proposition we are in no wise concerned, although we may take judicial notice of the fact that additional water supplies are sadly needed, not only to provide for future growth, but to serve adequately the present population. Our concern is with the question of legislative power.

Article 6, § 1, of our Constitution provides:

"The Legislative power of the State shall be vested:

"1. In a Senate and House of Representatives which shall be designated the Legislature of the State of Utah.

"2. In the people of the State of Utah, as hereinafter stated."

From this we see the Legislature has vested in it all legislative power of the state except as limited by the Constitution itself. The subject-matter of subsection 2 of the section above quoted need not detain us, since it refers to the legislative power to be exercised by the people by means of the initiative and referendum, a subject not involved here. The court, in a former case, spoke of this power as follows:

"The state having thus committed its whole lawmaking power to the legislature, excepting such as is expressly or impliedly withheld by the state or federal constitution, it has plenary power for all purposes of civil government. Therefore, in the absence of any constitutional restraint, express or implied, the legislature may act upon any subject within the sphere of the government. It may enact laws affecting the state at large, and all its people; and for the purpose of creating local jurisdictions it may establish districts, provide for the incorporation of towns and cities, and enact laws for the government of such districts and municipalities." *Kimball* v. *Grantsville City,* 19 Utah 368, 57 P. 1, 4, 45 L. R. A. 628.

In approaching the subject we have in mind the rule that when an act of the Legislature is attacked on grounds of unconstitutionality the question presented is not whether it

is possible to condemn the act, but whether it is possible to uphold it. The presumption is always in favor of validity, and legislative enactments must be sustained unless clearly in violation of fundamental law. *Wadsworth* v. *Santaquin City*, 83 Utah 321, 28 P. (2d) 161. Every presumption will be indulged in favor of legislation and only clear and demonstrable usurpation of power will authorize judicial interference with legislative action. *Green* v. *Frazier*, 253 U. S. 233, 40 S. Ct. 499, 64 L. Ed. 878. It is a truism recognized by all the authorities that the Legislature of a state is vested with the whole of the legislative power of the state and may deal in any subject within the scope of constitutional government except as such power is limited or directed by express provision of the Constitution or necessary implication arising therefrom. "State Constitutions are mere limitations, and not grants, of powers." *Salt Lake City* v. *Christensen Co.*, 34 Utah 38, 95 P. 523, 17 L. R. A. (N. S.) 898.

The presumption which attends every act of the Legislature is that it is within its power, and any one who would attack the legality of a legislative act must point to the particular provision of the organic act which he claims excludes such power from legislative competence or demonstrate that it is clearly excluded by necessary implications arising from constitutional provisions. It is one of the objects of government to promote the public welfare of the state and provide for the material prosperity of its people. It is for the Legislature to determine the manner and extent to which it will exercise this function of government, and its determination upon that point is limited by its own discretion, and is beyond the interference of the courts. In re *Madera Irr. District*, 92 Cal. 296, 28 P. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106.

In the light of these fundamental principles we shall proceed to consider the questions argued in the briefs of counsel.

It is contended the act is unconstitutional as an attempt to unlawfully delegate the power of taxation to a special commission and to interfere in city and town affairs in violation of the provisions of article 6, § 29, which reads as follows:

"The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site or to perform any municipal functions."

This contention cannot be sustained for the reason that the board of directors to whom the management and control of the district has been intrusted, and which is to exercise the powers and perform the functions of the public agency thus created, does not come within the designation "special commission, private corporation or association" to which the inhibitions of the section apply. *City of Pasadena* v. *Chamberlain*, supra. Nor does the act provide for interference with any municipal improvement, money, property, or effects. The power of control vested in the board of directors is over the property, improvements, money, and effects of the district, and not that of any of the cities or towns whose territorial boundaries may be coincidental with that of the district or included therein. The powers of the board are limited by the act to the levying of taxes for the public purposes mentioned therein.

None of the municipal functions of the component cities or towns is conferred on or delegated to the Metropolitan Water District. Each of such cities and towns will possess and may continue to exercise every municipal function it now has. There need be no friction between the two, but the closest cooperation is contemplated and should result.

Objection is urged that the members of the board are not elected by the electors of the district but are appointed by the governing authorities of the cities or towns as representatives of such municipalities. We, however, find no provision of the Constitution which limits the power of the

Legislature to provide for the governing or control of such public agencies by officers selected in the manner provided rather than by election. In the absence of constitutional provision controlling legislative action in this respect, the choice of methods by which the governing body may be selected is within the discretion of the Legislature. If it be objected that the Legislature in this manner is usurping some of the powers of local self-government, the answer is that before a Metropolitan Water District can be organized it must have a majority vote of the electors within the district in support thereof and such vote carries with it an approval of the method by which the officers of the district shall be selected. *City of Pasadena* v. *Chamberlain,* supra; *Metropolitan Water District of Southern California* v. *Burney,* supra.

It is urged the act is special and not general, in violation of article 6, § 26, to the effect that "in all cases where a general law can be applicable, no special law shall be enacted." The act purports to be a general law applicable to all portions of the state and makes available ■ to the inhabitants of all cities and towns, seeking to take advantage of its provisions, the opportunity of organizing Metropolitan Water Districts. The mere fact that its benefits may, under present opportunities and conditions, be availed of by a part of the state only, does not mitigate against its validity as a general law. *City of Pasadena* v. *Chamberlain,* supra. While only one group of cities or towns may now attempt to organize under its provisions, yet at any future time other cities and towns may do likewise. The act is not limited to any particular cities or towns, or to any particular locality in the state, but it operates uniformly on every city or town which may choose to take advantage of its provisions. In form, as well as in substance, it is a general law and not special. *Salt Lake City* v. *Salt Lake County,* 60 Utah 423, 209 P. 207; In re *Orosi Public Utility District,* 196 Cal. 43, 235 P. 1004.

It is contended the act violates the due process clauses of the state and Federal Constitutions, in that taxing powers conferred on the district are in the nature of assessments for benefits and no provision is made for the landowners assessed to be heard on the question of benefits. The objection is not well taken, because the tax provided to be imposed is a general ad valorem tax similar to general taxation and not an assessment for benefits as such is known in connection with drainage, irrigation, and other special assessment districts. The right of the property owner to be heard before a competent tribunal on the question of benefits is essential to avoid running counter to the constitutional requirement of due process before the imposition of burdens which might result in depriving a landowner of his property by means of special assessments. *Argyle* v. *Johnson,* 39 Utah 500, 118 P. 487; *State ex rel. Lundberg* v. *Green River Irrigation District,* 40 Utah 83, 119 P. 1039. The people of the district have opportunity to be heard with respect to the organization of the district, and this carries with it, if adopted and approved by the voters, the power of taxation on all property within the district for the purposes of the district. Provision is made in the act for the imposition of such taxes on the property as assessed and valued for purposes of general taxation so that the property owners have a right to be heard as to the valuation of their property the same as when such property is levied upon for general taxes. This same objection was the strongest and most important one urged against validity of the Metropolitan Water District Act before the Supreme Court of California in *City of Pasadena* v. *Chamberlain,* supra. The court gave such a satisfactory explanation of the grounds on which it sustained the validity of the legislation in the face of such objection that we can do no better than adopt their reasons and quote fully from that decision:

"This contention presents precisely the same question which was presented to this court in several recent cases. *Henshaw* v. *Foster,*

176 Cal. 507, 169 P. 82; *Miller & Lux* v. *Board of Supervisors,* 189 Cal. [254], 255, 208 P. 304; In re *Orosi Public Utility District,* 196 Cal. 43, 235 P. 1004. An examination of these cases will serve to show that the former distinction sought to be drawn between what are governmental and what are proprietary powers to be exercised by public corporations, in so far as the maintenance of these by general taxation is concerned, is fast fading out of our jurisprudence. The most recent case, above cited, aptly expresses this tendency, wherein it says:

" 'We take it to be now a generally accepted proposition that, while a municipality, which undertakes to supply those of its inhabitants who will pay therefor with utilities and facilities of urban life, is performing a function not governmental, but more often committed to private corporations * * * with whom it may come into competition, it is, in fact, engaging in business upon municipal capital, and for municipal purposes.' * * *

"The supplying of water for domestic uses within municipalities has grown of recent years to be one of the most common and well-recognized forms of municipal activities wherein public property is employed and wherein public taxation is imposed and collected upon the inhabitants of the municipalities regardless of benefits conferred upon particular property, and by the same method by which taxes are generally levied and collected for the carrying on of the governmental functions of incorporated cities and towns. Municipal corporations, whether organized under special charters or general laws, derive these particular powers from the same legal sources as those which provide for the organization of quasi municipal corporations such as that provided for in this act, and we can perceive no real disinction between the organization of a municipal corporation, strictly so-called, for the carrying forth of the purposes usually committed to such governmental agencies and the organization under legislative sanction of such other governmental agencies as municipal water districts or public utility districts or metropolitan water districts, which, while these may not exercise all of the functions committed to municipal corporations, strictly so-called, are empowered to exercise certain of these functions which have come to be recognized as at least quasi governmental in character. Nor can we perceive any substantial reason why such district when so organized may not be invested with the same powers in the matter of the levying and collection of taxes for the carrying forth of its limited purposes with which municipal corporations are invested for the carrying forth of similar, though more diversified purposes. Nor can we discover any rational theory upon which in the levy and collection of such taxes the powers of

either should be limited by those rules which have been given application in the formation of that class of public agencies wherein the assessments imposed upon a particular property have such direct reference to benefits conferred as to require notice and opportunity for hearing to be given to the owners of the property to be affected by the assessments thus to be imposed. The decision last above cited expressly holds that any tax levied and imposed for the purpose of supplying capital for the foregoing municipal or quasi municipal purposes is not to be regarded as 'a tax or assessment on property directly benefited by the construction of some local improvement, but is a general tax levied just as, and for the same purpose that, any general municipal tax is imposed for carrying on the governmental functions and utilitarian objects of duly incorporated cities or towns.' We are constrained, therefore, to the conclusion that the Legislature in investing metropolitan water districts to be formed under the provisions of the act in question with power, through their properly appointed officials, to collect general taxes within the municipalities uniting in the formation of such districts for the common purpose of supplying each with water for domestic uses has not acted in violation of any provision of the state Constitution to which our attention has been directed."

Objection is made that the notice of election on the organization of the district is insufficient to give reasonable notice to the electors thereby violating article 4, § 2, of the Constitution, which provides that every qualified citizen of the United States of the age of twenty-one years and upwards shall be entitled to vote at all elections. The Constitution makes no provision respecting the kind of notice to be given of elections. The matter of notice is peculiarly within legislative discretion, subject only to the limitation that the notice provided shall not be so unreasonably insufficient as to do violence to the requirement of due process. Notice has been provided by the act by publication of such notice in a newspaper of general circulation printed and published in each county in which any portion of the proposed district shall lie, instead of requiring that such notice shall be printed in a newspaper printed and published within each of the cities or towns within the proposed district. As a practical matter the notice of election will undoubtedly be given wide publicity

in order that the people entitled to vote will have opportunity to voice their approval or disapproval of the proposed organization. Be that as it may, we are aware of no constitutional provision which was infringed or violated by the nature of the notice specified in the act.

Section 31 of article 6 of the Constitution provides as follows: ■

"The Legislature shall not authorize the State, or any county, city, town, township, district or other political subdivision of the State to lend its credit or subscribe to stock or bonds in aid of any railroad, telegraph or other private individual or corporate enterprise or undertaking."

Section 18 (k) of the act provides that a Metropolitan Water District shall have power to join with other corporations, public or private, for the purpose of carrying out any of its powers, and to obligate itself jointly or severally with other corporations in financing its operations and to become surety for the payment of any indebetdness, or the performance of any contract or obligation of any corporation in which the district shall have shares of stock. Defendant's counsel urge that this provision of the act is so apparently unconstitutional as to require no argument. With this view we cannot agree.

If we assume the above section of the Constitution is applicable to such a district as the Metropolitan Water District, yet we think its provision not violated, since the act does not purport to authorize the district to lend its credit to or subscribe for stocks or bonds in aid of any "railroad, telegraph or other private individual or corporate enterprise or undertaking." The purposes for which the broad powers are granted the district are for the acquiring, developing, and use of water for public benefit, and particularly for municipal and domestic uses by the inhabitants of the cities and towns which may organize a separate district or join with the inhabitants of other cities and towns in the organization of a single large district. The section must be

read and construed with reference to the purposes of the act. Since the district is not yet organized and there is no proposed contract before us by which the district is attempting to obligate itself for the payment of any indebtedness or the performance of any contract or obligation of any other corporation, we can speak only in a general way of this provision. If it can be construed in a manner which does no violence to constitutional provisions, neither the act nor the specific provision can be declared void as unconstitutional. We may assume that the district will exercise this power in furtherance of the public purposes for which it was organized, and that in any contract of this kind the district will protect itself by providing that if it is required to pay the obligation of another district or corporation it will become owner of the water rights or other property for which it will have paid, and not be required to pay for something it does not get. We may illustrate in this way: The district may subscribe for a certain number of acre feet of water and by the government be requested to guarantee payment of all water subscribed by other subscribers. Its contract would be in the nature of a definite obligation to take and pay for the water for which it subscribes and a conditional subscription for the amount of water subscribed by others for the payment of which it becomes surety or jointly liable. This may increase the quantity of water a district may have to take over and above that which it had planned to obtain. The question of how much water a district will buy is for the officials to determine, within the limit of restrictions fixed by the statute.

In this arid region any corporation obtaining a supply of water will have a valuable asset. The total sum to which a district may obligate itself to pay must be within the limit fixed by statute. In other words, the direct obligation and the conditional or surety obligation should be computed together as a debt of the district and the total amount should not exceed the statutory limitation. If the provisions of section 18 of the act be thus construed, we do not believe

they contravene the constitutional inhibitions. Merely because the power granted may be broad enough to permit the doing of something inhibited by constitutional provision is not sufficient reason for us to hold the entire act bad. If the district, after its organization, should attempt to lend its credit to or subscribe for stock in any of the prohibited, private, individual, or corporate enterprises, the courts would stay such prohibited action at the instance of any proper party.

Objection is made that the enumeration of powers in section 42 of the act authorizing the district "to purchase, and the city or body, board, commission or officer thereof, to sell, such works or projects taken over by such district, and for which such city, body, board, commission or officer thereof, has no further use or need," is in violation of the inhibition contained in section 6 of article 11, of the Constitution, wherein municipal corporations are prohibited from "directly or indirectly leasing, selling, alienating or disposing of any water works, water rights or sources of water supply." It is also provided in the act that the district may sell, lease, or dispose of its property including water and water rights. This also is said to be in violation of the same constitutional section because a corporation formed under the act is a municipal corporation. The question of whether the district is a municipal corporation will be hereinafter discussed. We are not, however, at this time required to pass on this objection. Whatever be the nature or classification of the corporation sought to be organized and whether or not it comes within the inhibition of article 11, § 6, it is clear that it is not now attempting to sell or alienate any water rights or water sources of supply, nor is any city or city officer attempting so to do. The language of the Constitution is plain enough in its meaning, and any expression of views in this opinion with respect thereto would be merely gratuitous. The main purposes of the organization of a metropolitan water district can be accomplished by the acquiring of water, water rights, and

sources of water supply for the use of the inhabitants of the district. It will be time enough to determine the powers of the district in the disposition of such property when, if ever, it should attempt to alienate its water rights and waterworks so that the inhabitants of the district would be deprived of the use and benefit thereof. There are many kinds of property which a city or town might dispose of without violating the constitutional provision referred to, but it is not now necessary to say how far, if at all, the provisions of section 42 of the act may conflict with section 6 of article 11 of the Constitution. If any city council or board of commissioners should attempt to dispose of its water supply or waterworks to a Metropolitan Water District or to any other corporation or person, that question can be decided in a proper case when the court will be informed as to just what action is attempted to be taken.

It is strongly argued that the act, which permits the district to become indebted in a sum not exceeding 10 per cent of the value of the taxable property of the district, is a violation of sections 3 and 4 of article 14 of the Constitution. Section 3 provides that "no debt in excess of the taxes for the current year shall be created by any county or subdivision thereof, or by any school district therein, or by any city, town or village, or any subdivision thereof in this State," unless authorized by a majority vote of the electors therein. Section 4 limits the debt of counties and then provides "no city, town, school district or other municipal corporation, shall become indebted to an amount, including existing indebtedness, exceeding four per centum of the value of the taxable property therein."

Two questions are involved in this objection. One arises out of the use of the repeated phrase in section 3 "or subdivision thereof" applicable to counties in one instance and to "any city, town or village" in the other. Is there a necessary implication from this language that the Constitution makers intended to limit the indebtedness which the people may incur through any and all public agencies to the per-

centages of assessed valuation specified in section 4? It is urged that the language of article 14, § 3, brings such a corporation as a water district within the limitations of sections 3 and 4 because it attempts to cover every unit of the state except the state itself by saying that "no debt in excess of the taxes for the current year shall be created by any county or subdivision thereof, * * * or by any city, town or village, or any subdivision thereof." Obviously, if any subdivision of a county created a debt it would have to be computed as part of the county debt, or if any subdivision of a city created a debt it would be computed as part of the city debt. Light is thrown on the use of the word "subdivision" by reference to article 11, § 1, wherein precincts and school districts are referred to as subdivisions of the county. Precincts are governmental in character and are subdivisions of the county but have no separate corporate existence. (The Legislature has not conferred on any precinct the power to create a debt. If such were done undoubtedly that debt would be computed as part of the debt of the county.) School districts, although a subdivision of a county, are recognized as having independent debt limitations by article 14, §§ 3 and 4. It is significant that true municipalities such as cities and towns are nowhere referred to in our Constitution as subvivisions of the county but are regarded as public agencies of government deriving their powers directly from the state by means of general laws to be enacted by the Legislature or by home rule charter pursuant to article 11, § 5.

We are satisfied the Metropolitan Water district is not a subdivision of either a city, town, or county within the meaning of the word "subdivision" as used in the Constitution.

The other question is whether the Metropolitan Water District, if otherwise a valid organization, is a municipal corporation and hence subject to the 4 per cent limitation imposed on "other municipal corporations" mentioned in section 4. If such district is in the class of "other municipal

corporations" referred to, it is then subject to the limitation of debt therein imposed. If it is not such a municipal corporation, and is otherwise lawfully created, it is not then subject to such limitation. If the district be a municipal corporation it would not necessarily follow that the act is void but the limitation of debt would be the constitutional limit of 4 per cent instead of the statutory 10 per cent. We think it is not a municipal corporation and is therefore not subject to the 4 per cent limitation imposed by the Constitution on municipal corporations.

There is no uniformity of classification of the public agencies which may be set up by a state. In 43 C. J. p. 72, it is said:

"Public corporations are all those created specially for public purposes as instruments or agencies to increase the efficiency of government, supply public wants, and promote the public welfare. Public corporations are classified as municipal, quasi-municipal, and public-quasi corporations. Public corporations include not only municipal corporations, but also all other incorporated agencies of government of whatever size and form or degree of organization. While all municipal corporations are public corporations, all public corporations are not municipal corporations."

In this state irrigation, drainage, and mosquito abatement districts have heretofore been created by legislative enactment, and the validty of the drainage and irrigation districts has been sustained by this court. There is a marked distinction between such districts, where assessments may be levied based on benefits to the property included, and a Metropolitan Water District where taxes may be levied on the basis of value on all the property within the district.

The word "municipal" was defined before statehood in *Salt Lake City* v. *Henry Wagner*, 2 Utah 400, as:

"A municipal corporation is 'one investing the people of a place with the local government thereof.' The 'local government' cannot be said to include that which is not local, nor in any way concerns the 'local' affairs."

1 McQuillin (2d Ed.) 365, in defining the words "municipal corporation," says:

"The characteristic feature of a municipal corporation beyond all others is the power and right of local self-government."

The decisions in other states classifying certain districts as municipal corporations make such classification largely for the reason that the public corporations so created exercise some of the functions of local government. It was stated in *Cook* v. *Portland,* 20 Or. 580, 27 P. 263, 265, 13 L. R. A. 533:

"The test of a corporation for municipal purposes, adopted by the court, seems to have been the right or power to exercise some of the functions of government, and this we apprehend is the true test." *State* v. *Port of Astoria,* 79 Or. 1, 154 P. 399.

These cases recognize the difference between "pure municipalities" such as cities and towns, and other municipalities which do not have so extensive powers of local government. The act does not confer any of the functions of local government on Metropolitan Water Districts, but does vest in them powers which have come to be associated with municipal corporations in their proprietary capacities, and for which the power of taxation is conferred to further its purposes. *City of Pasadena* v. *Chamberlain,* supra. The Legislature specifically classified the agency to be created under the act in section 3 thereof by providing "each such district when so incorporated shall be a separate and independent political corporate entity." By definition it excluded such districts from the classification of municipalities. In section 2 of the act it is said:

"As used herein the term 'municipality' or 'city' shall be deemed to mean and include any incorporated city or town of the state of Utah."

The classification given by the Legislature, while not at all controlling in construing constitutional language, nevertheless should prevail unless we find some provision of the Constitution which requires a different designation or classification.

The use of the term by the Constitution makers is in harmony with the definition given by the Supreme Court of the territory in *Salt Lake City* v. *Wagner*, supra. The word is found in only a few places of the Constitution.

In section 4, article 14, it is provided, after referring to county indebtedness:

"No city, town, school district or other municipal corporation, shall become indebted to an amount, including existing indebtedness, exceeding four per centum of the value of the taxable property therein."

Further on in the same section is this language:

"provided, that no part of the indebtedness allowed in this section shall be incurred for other than strictly county, city, town or school district purposes."

The clause last quoted clearly indicates that the words "or other municipal corporation" are used to include only such municipal corporations as are specifically enumerated, and others of like character. This is in accord with the ejusdem generis rule of interpretation, which is that where there are words of general import following an enumeration of words of specific signification the general words are naturally and ordinarily, unless there is some indication to the contrary, to be understood as limited in their meaning to things of like kind to the particular ones. 19 C. J. 1255. In construing a statutory title using the words, "cities, towns, townships and other municipalities in this State" (P. L. 1918, p. 1041), the New Jersey court construed the phrase "other municipalities" as follows:

"In my opinion, the sense in which 'other municipalities,' as used in this title, 'would naturally and generally be taken,' or 'would probably be understood by nonprofessional persons of ordinary intelligence,' includes municipalities of like kind to those specifically enumerated, subordinate municipalities, but excludes such a 'municipality' as the state highway commission." *Curtis & Hill Gravel & Sand Co.* v. *State Highway Commission*, 91 N. J. Eq. 421, 111 A. 16, 20.

In section 5, art. 11, is found the following language:

"Corporations for municipal purposes shall not be created by special laws. The legislature by general laws shall provide for the incorpora-

tion, organization and classification of cities and towns in proportion to population. * * *"

Here again the word "municipal" is limited by subsequent language referring to cities and towns. Section 6 of the same article provides that no municipal corporation shall directly or indirectly lease, sell, alienate, or dispose of any waterworks, water right, etc. There is not anything in that section to indicate the meaning of the term "municipal corporation," except that the section is included in the article entitled "counties, cities and towns." It is fair to say the framers of the Constitution intended to use the term "other municipal corporations" in its restricted sense as applicable to incorporated cities and towns invested with the powers of local legislation, or other corporations organized for the same purposes even though under different names.

A Metropolitan Water District is not a "municipal corporation" within contemplation of the Constitution, but it is a public agency or entity created for beneficial and necessary public purposes. Its corporate structure is substantially the same as that of the Metropolitan Water District of California, and other agencies of that state which have been held valid as public and quasi-municipal corporations or districts. *Wheatley* v. *Superior Court in and for Napa County*, 207 Cal. 722, 279 P. 989.

The characterization "quasi-municipal" we think accurate. The water district is not a true municipal corporation having powers of local government, but is an agency of the state vested with some of the powers and attributes of a municipality; hence it is not a municipal corporation but is quasi-municipal. "Quasi" is defined as follows in 51 C. J. 119:

"A Latin word, in frequent use in the civil law, signifying 'as if, almost.' It marks the resemblance, and supposes a little difference between two objects."

As we have seen, the act does not violate any express provision of the Constitution to which our attention has been called, but it is further contended by defendants that even

though no specific language is violated, yet the intent of the Constitution may be shown by implications (*State* v. *Greer*, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298; *Attorney Gen.* v. *Moores*, 55 Neb. 480, 76 N. W. 175, 41 L. R. A. 624) as well as by the words of express provisions, and that the act is inconsistent with the spirit and true intent of the Constitution. That it permits cities and towns to incur indebtedness in excess of that provided in article 14, § 4, and to alienate water rights and waterworks in violation of article 11, § 6, thereby permitting cities and towns to do by indirection what they may not do directly. It is argued that the framers of the Constitution attempted most thoroughly to specifically limit the indebtedness other than that which could be paid out of the taxes of the current year of the state, and of all and every subdivision thereof so that the taxpayers could not, if they would, become indebted by or through any public corporation or governmental agency in excess of the percentage of assessed valuation of property specified in the Constitution. It is true the framers of the Constitution feared debt and wisely attempted to place restrictions on the governmental subdivisions so that they could not incur indebtedness in such amount as to lead to insolvency. The restrictions were not, however, placed on the people directly but on the state, counties, cities, towns, and school districts, and other municipalities in and through which the people were to be governed. There is no prohibition expressly or by implication restraining the legislative power from providing other corporations or organizations for public purposes by which the public welfare might be advanced. If the debt limitations are construed so strictly as to prevent the creation of any public corporation with the power to incur debt payable by taxpayers, except those specifically enumerated and to the extent permitted, it would seem to follow that the legislative power could not extend to the creation of irrigation, drainage, and other districts with limited powers. These have the power to incur debt and to collect money by

assessments on property in payment of such debt and for the operating expenses of the district. The creation of such districts has been held within the lawful exercise of power by the Legislature. *Argyle* v. *Johnson,* 39 Utah 500, 118 P. 487; *State ex rel. Lundberg* v. *Green River Irrigation District,* supra; *State ex rel. Ferry* v. *Corrine Drainage Dist. of Box Elder County,* 48 Utah 1, 156 P. 921.

As already indicated, these districts are essentially different in some respects from the Metropolitan Water District created by the act. They are at one end of the gamut of state agencies with municipal corporations at the other. Nevertheless they impose burdens on property, in the nature of special assessments, and are entirely outside of the constitutional restrictions on municipal corporations.

The general rule is that stated by Mr. McQuillin in 1 McQuillin Municipal Corporations (2d Ed.) 387:

"In the absence of constitutional limitations the state legislature may create any kind of a corporation to aid in the administration of public affairs and endow such corporation and its officers with such powers and functions as it may deem necessary."

The Legislature, by the exercise of its inherent powers, when not limited by constitutional provision, may and has provided for the districts named, and in this state by Rev. St. Utah 1933, 56-0-1, mosquito abatement districts are authorized having many features comparable to those found in the Metropolitan Water District Act. The Mosquito Abatement District Act, however, has never been tested in the courts. In other states, however, many kinds of public corporations or agencies are authorized to perform different limited public functions for the benefit of landowners or the inhabitants of the district. Among others, irrigation districts: *Miller & Lux* v. *Board of Supervisors,* 189 Cal. 254, 208 P. 304; *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369; *Davy* v. *McNeill,* 31 N. M. 7, 240 P. 482; *Columbia Irr. Dist.* v. *Benton County,* 149 Wash. 234, 270 P. 813; In re *Madera Irr. Dist.,* 92 Cal. 296,

323, 28 P. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106. Flood control: *Los Angeles County Flood Control Dist.* v. *Wright*, 213 Cal. 35, 2 P. (2d) 168; *Los Angeles County Flood Control Dist.* v. *Hamilton*, 177 Cal. 119, 169 P. 1028. Reclamation districts: *Hagar* v. *Reclamation District No. 108*, 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569. Utility districts: *In re Orosi Public Utility Dist.*, 196 Cal. 43, 235 P. 1004. Sanitary districts: *Woodward* v. *Fruitvale Sanitary Dist.*, 99 Cal. 554, 34 P. 239; *Pixley* v. *Saunders*, 168 Cal. 152, 141 P. 815. Tunnel districts: *Milheim* v. *Moffat Tunnel Imp. Dist.*, 72 Colo. 268, 211 P. 649. Health districts: *Stuckenbruck* v. *Board of Supervisors*, 193 Cal. 506, 225 P. 857. Water improvement districts: *Shelton* v. *City of Los Angeles*, 206 Cal. 544, 275 P. 421; *Lowery* v. *Water Imp. Dist. No. 5*, 122 Okl. 116, 251 P. 748; *Henshaw* v. *Foster*, 176 Cal. 507, 169 P. 82, 84; *Kennebec Water Dist.* v. *City of Waterville*, 96 Me. 234, 52 A. 774. Highway districts: *Doyle* v. *Jordan*, 200 Cal. 170, 252 P. 577. Port districts: *Cook* v. *Port of Portland*, 20 Or. 580, 27 P. 263, 13 L. R. A. 533; *State* v. *Port of Astoria*, 79 Or. 1, 154 P. 399; *Paine* v. *Port of Seattle*, 70 Wash. 294, 126 P. 628, 630, 127 P. 580. Bridge districts: *Golden Gate Bridge and Highway Dist.* v. *Felt*, 214 Cal. 308, 5 P. (2d) 585; *In re California Toll Bridge Authority*, 212 Cal. 298, 298 P. 485.

These are cited merely to show the variety of valid agencies set up by the state to accomplish necessary public purposes without impinging on the constitutional restraints applicable to cities and towns. It is true that in the drain- and irrigation district cases decided by this court the precise questions now raised were not discussed, and these decisions are not in point because of the differences in the nature of the districts created. Some of them have been raised and decided in decisions from other jurisdictions wherein most of the questions now before us have been discussed and decided. In some states the same or similar constitutional provisions are found, while in others the Constitution is different. In California there is no debt limi-

tation such as found in article 14, § 4, of our Constitution, although debts may not be incurred by municipalities except by authorization of the qualified electors similar to the provisions found in article 14, § 3. It is generally recognized that the debts of special improvement or assessment districts are excluded from constitutional limitations with respect to the cities, towns, counties, school districts, or the state, notwithstanding they may operate within the same territorial boundaries. Such public corporations are nowhere mentioned in or authorized by the Constitution but are created by the Legislature under its inherent power.

The argument that there is an implied prohibition in the Constitution against the creation of public corporations with municipal powers other than those mentioned in the Constitution has been answered favorably to legislative power in many states. In *Paine* v. *Port of Seattle*, supra, the court said:

"Our attention is called to certain provisions of the Constitution wherein counties, cities, towns, and school districts are specifically named and recognized as municipal or public corporations, and also to the fact that no others are specifically named in the Constitution. It is argued that this, in effect, is an implied prohibition against the creation of other municipal corporations. No constitutional provision has come to our notice, and we feel quite sure there is none, which, in terms, prohibits the Legislature from providing for the creation of other municipal corporations than those specifically named in the Constitution. Indeed, it is apparent from a reading of the several provisions of the Constitution wherein we find counties, cities, towns, and school districts specifically named that those provisions were adopted for the purpose of prescribing the duties of the Legislature in making provisions for the organization of such corporations, and not for the purpose of conferring upon the Legislature the power to provide for their creation. The language of the Constitution in so far as it relates to these specifically named corporations clearly manifests an assumption on the part of the framers of that document that the Legislature has the inherent power to provide for the creation of those specifically named corporations without any express grant in the Constitution."

In that case the court, under a different constitutional provision, held the port district was a municipal corporation and subject to the same constitutional limitations of indebtedness as any other municipal corporation, but that it was an independent entity having power to incur indebtedness on its own account up to the limitations fixed by the Constitution, notwithstanding such indebtedness may increase the gross indebtedness of the particular territory in which it operated beyond the constitutional limit fixed for any one corporation. In other words, any such corporation may incur its own indebtedness and is not affected by the indebtedness of the different municipal corporations having jurisdiction over the territory in whole or in part on which it is superimposed.

The Legislature of Oklahoma adopted a water district act which was attacked on the ground the Legislature had no power to confer on any municipal corporation, other than cities or towns, the authority to purchase, own, operate, and manage a water distribution system, in the face of a constitutional provision permitting cities to become indebted in a larger amount than permitted for general purposes where such larger indebtedness was for the purchase or construction of public utilities. This section is similar to the one in our Constitution permitting cities to become indebted in an additional sum for water, sewers, and lights. The Oklahoma court held the constitutional provision was a grant of power to cities and towns and was not intended as a limitation on the power of the Legislature to create other public corporations having like powers to own and operate water systems. *Lowery* v. *Water Improvement Dist. No. 5*, supra.

The California cases are to similar effect. In *Henshaw* v. *Foster*, supra, the same argument was made that the implication arising from constitutional provisions providing that municipal corporations have power to own and operate utilities, including water systems, and since there were three cities included in the proposed water districts, each

being vested with the power of furnishing water to their inhabitants, there would be an intolerable clash of authority and the creation of a situation in conflict with the Constitution. The court, however, held there were no constitutional inhibitions contained in the articles under consideration nor arising from the Constitution as a whole, and concluded:

"In the case at bar the reason for a like conclusion with reference to municipal water districts is much stronger because in the statute providing for their creation and operation we discover the legislative design of permitting the formation of districts for the convenient and economical development of a water supply within an area physically appropriate for such purpose without unduly restricting the powers of the inhabitants and their privileges by reason of the existence of smaller political entities situated within the larger tract and possessing powers somewhat similar to those secured for the corporation embracing the larger territory. The purpose is beneficent. By the law and under its sanctions the people of one or more municipalities with the adjacent territory may unite for the joint benefit of all forming a municipal corporation through which they may accomplish that which it would be impossible for any one of the constituent municipal or suburban units to perform. Unless grave constitutional reasons impel this court to the contrary, such an act will be upheld."

The mere fact that the territory of one public corporation is superimposed upon another does not affect the validity of the new district. The boundaries of any such district may be either greater or smaller or coterminus with another, and that is true whether the corporation or organization be created as a municipal corporation, quasi-municipal, or merely an assessment district. 15 R. C. L. 497; *Board of Education* v. *Upham,* 357 Ill. 263, 191 N. E. 876, 94 A. L. R. 813; *In re Madera Irr. Dist.,* supra; *Paine* v. *Port of Seattle,* supra; *Stuckenbruck* v. *Board of Supervisors,* supra. Each such corporation may contract debt, without reference to other districts or corporations, up to the separate constitutional or statutory limit fixed for it. *Kennebec Water Dist.* v. *City of Waterville,* supra; *People* v. *Honeywell,* 258 Ill. 319, 101 N. E. 571; *Borrowdale* v. *Board of Com'rs of Soccoro County,* 23 N. M. 1, 163 P. 721, L. R. A. 1917E, 456, and note page 468; *Board of Commis-*

268

*sioners* v. *Reeves,* 148 Ind. 467, 46 N. E. 995; *Wilson* v. *Board of Trustees of Sanitary Dist.,* 133 Ill. 443, 27 N. E. 203; *Shelton* v. *City of Los Angeles,* supra; *Board of Com'rs of Monroe County* v. *Harrell,* 147 Ind. 500, 46 N. E. 124; *Paine* v. *Port of Seattle,* supra.

The rule is stated in 6 McQuillin Municipal Corporations, 21, as follows:

"The constitutional limitation upon the extent of corporate indebtedness usually applies to each municipal corporation separately, and where one corporation embraces in part the same territory as others, each may contract corporate indebtedness up to the constitutional limitation without reference to any other corporation embraced wholly or in part within its area, unless the contrary is expressed in the constitution."

Classic illustration of this principle is that of a school district whose boundaries are coterminus with that of the city where each is a separate political entity but the indebtedness of each is separate and not included in computing that of the other. *Russell* v. *Middletown City School Dist.,* 101 Conn. 249, 125 A. 641. This is true in this state under the specific wording of the Constitution. The same principle, however, appears in instances of other public corporations or districts where the debt limit is computed separately and not computed in that of the county in which the district lies or any city whose lands may be partly or wholly included within the district.

There is neither any express limitation on legislative action contained in the constitution, nor any necessary implication arising therefrom, which would justify us in declaring the Metropolitan Water District Act invalid as in excess of legislative power.

The writ of mandate heretofore issued is made permanent and the city recorder of Lehi City is hereby directed to proceed to cause to be transmitted forthwith certified copies of the ordinance of Lehi City, described in our original writ of mandate, to the chief executive officer of each of the

cities and towns named in said ordinance, other than Lehi City.

ELIAS HANSEN, C. J., concurs.

WOLFE, Justice (concurring specially).

I cannot believe it could be seriously contended that the Legislature could not constitutionally permit cities or towns to associate themselves together for the purpose of performing certain municipal functions which none of them would be financially capable of separately performing. The manner of supplying water to the inhabitants of municipalities is a municipal function, whether it is on one side or the other of the increasingly shadowy line between functions exercised proprietarily or governmentally. If the Legislature chooses some other way to permit cities to combine their resources for the purpose of supplying each with water, such as was endeavored to be done by the Metropolitan Water Act (Laws 1935, c. 110), rather than providing for the mere association, there would have to be something in the Constitution quite definite to prohibit it before we could say that the method was not constitutional. A Metropolitan Water District authorized by the act is a political and public entity, separate from any of the cities embraced within the confines over which it operates. It would be so had the act not so specified. It is not an association of cities like a municipal league which might be given by law certain powers as an association. It is not even a composite of municipal entities. It is not a super-municipal entity in the sense that it is sovereign over the cities which are included within its confines. It is connected with the cities and towns which are included within its territorial limits over which it operates, but is an entity distinct from any of those entities. While its activities embrace the same portions of the earth's surface as do those of the cities and towns which are included within its confines, that does not make it a mere combination or an addition of city and town

entities. Every public entity which operates over communities governmentally must necessarily operate over a territory, because communities live and have their being on particular portions of the earth's surface. But every county, city, or town is really an entity distinct from the mere territory over which it operates. The territorial limitations simply limit the property, the persons, and the communities in regard to which the city or town entity functions. It is incorrect to think of a city or town as operating primarily on territory. A city is not just a territorial division or a portion of the earth's surface which could equally well be defined by metes and bounds. A city is a public corporation possessing a number of powers and duties with respect to the people, and the communities which live therein, and with respect to the things which are located therein and transactions which take place therein. The essence of the nature of a city or town entity depends upon the functions it may perform with respect to the people and things within its territorial confines. In the last analysis the difference between the various public agencies in the state is not so much that some have limited territorial jurisdiction in their impingment on these relationships, while others operate regardless of territorial limitations, but in the nature of the functions which they exercise. It is from this standpoint that we may determine whether the entity which this act authorizes is a "special commission" as meant by article 6, § 29, of the Constitution. A Metropolitan Water District is given the power to perform certain municipal functions. The function of building, acquiring, and operating water plants for delivery of water to the inhabitants of the city or town is unquestionably now a municipal function. As to whether it is a governmental function is still a question subject to difference of opinion. In the case of *Pasadena* v. *Chamberlain*, cited in the main opinion, the court points out that the distinction between governmental and proprietary powers is "fast fading out." The distinction, I believe, is, au fond, traditional. The function which a municipality

exercised for the protection of property and persons within its confines—police and fire protection—were perhaps most fundamentally governmental. These were extended gradually to include protection against dishonest trade practices, cheating, light weight, and under standard selling. This was really an extension of the policing to multitudinous business relationships. Parallel to these functions were those of building better cities—first streets, sewers, and municipal buildings, then parks, later extended to recreational facilities such as bathhouses, beaches, golf courses, play grounds, and dance halls.

On the other hand, the supplying of water, light, and gas were considered as commodities and subjects of commerce and were performed almost altogether in the beginning by private corporations. The matter of sewage was first performed by private corporations but came over very early together with water as a municipal function. When these services were performed by a municipality, the municipality was considered to be acting in a private or proprietary capacity. See *Western Sav. Fund Soc.* v. *Philadelphia,* 31 Pa. 175, 72 Am. Dec. 730; *Commonwealth* v. *Casey,* 231 Pa. 170, 80 A. 78, 34 L. R. A. (N. S.) 767. It is stated in Baldwin's Century Edition of Bouvier's Law Dictionary:

"As ordinarily constituted, municipal corporations have a dual character, the one governmental, legislative, or public; the other, proprietary or private. In their public capacity a responsibility exists in the performance of acts for the public benefit, and in this respect they are merely a part of the machinery of government of the sovereignty creating them, and the authority of the state is supreme. But in their proprietary or private character their powers are supposed to be conferred not from considerations of state, but for the private advantage of the particular corporation as a distinct legal personality."

Undoubtedly there is a difference between the nature of these service functions as compared with the so-called governmental functions. But there is also a difference between the various governmental functions. There is a difference between maintaining a police force and maintaining a park. So in the end the distinctions may be traditional

rather than natural or characteristic. However, when our Constitution was adopted this distinction between governmental and proprietary functions was quite well recognized and it will be necessary to interpret some of the terms and phrases of our Constitution with this difference in mind. Is a Metropolitan Water District a "special commission" as meant by that term as used in article 6, § 29, of the Constitution? In order that the provision may be analyzed we set it out in full:

"The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions."

Study of this and like provisions in other Constitutions reveals the fact that it appears in those other Constitutions in connection with other sections which give it more distinctly the content of purpose to prevent interference by the Legislature with local self-government, especially in the matter of such local units handling their property, improvements, and money. We believe the fundamental purpose of this whole section was to prevent interference with local self-government.

Mr. Black, in his work on Constitutional Law, says in the chapter on Municipal Corporations:

"The principle of local self-government is regarded as fundamental in American political institutions. It means that local affairs shall be decided upon and regulated by local authorities, and that the citizens of particular districts have the right to determine upon their own public concerns without being controlled by the general public or the state at large. For this purpose municipal corporations are established and are invested with rights and powers of government subordinate to the general authority of the state, but exclusive within their sphere. Municipal corporations are administrative agencies established for the local government of towns, cities, counties or other particular districts. The special powers conferred on them are not vested rights as against the state, nor are they in the nature of contracts, but, being wholly political, they exist only during the will of the legis-

lature. Such powers may at any time be changed, modified, repealed, or destroyed by the legislature, saving only the vested rights of individuals."

With this purpose to be subserved in mind, we must determine what content to give the words "special commission." Before doing that we pause to analyze the meaning of the term taken by itself without regard to the purposes which section 29 was intended to subserve. Just what was meant by the word "commission" it is difficult to say. Just how narrow the word "special" is meant to be, it is equally difficult to say. It is to be presumed that the word "commission" was advisedly used. It is defined in Webster's New International Dictionary as:

"A company of persons enjoined to perform some duty, to execute some trust; a body of commissioners."

And by the New Standard Dictionary as:

"a body composed of several persons acting under lawful authority to perform some public service, as a commission to codify."

Within its content of meaning is that which is derived from the more fundamental meaning of "commission," to wit, "to transact business of another under authority." One thinks of a state commission as exercising some special functions more directly for the state than for any given community in the state and as exercising them in regard to situations in a special field. Used alone, without the word "special," it suggests to the mind a body with rather special powers acting in relation to a limited field of human activities, as compared to the powers exercised by a county, city, or town which powers are more general but which are limited to communities. The powers exercised by the latter suggest something more fundamentally governmental and legislative, something more fundamentally affecting communities in their lives as a whole, rather than with respect to certain special transactions or relationships. The word "special" appears to circumscribe the word "commission" still further. It rather suggests a commission which is

specially created to do the things which are prohibited in that section. It may, however, be used in the sense of denoting a commission which has certain special functions as compared to a commission which has more general ones, or as compared to another commission with a different type of special functions. Thus, a public utilities commission has certain special functions as compared with the special functions of another commission such as the industrial commission or the securities commission.

Having discussed the meaning of the term "special commission" without resort to the extrinsic aid which the purposes which section 29 was intended to subserve might furnish, we now throw upon those words the illuminating light furnished by the objects which the section was designed to accomplish. One of the purposes of section 29 appears to be to prevent the Legislature from interfering with the property and powers of municipal corporations through some other governmental agency specially set up for the purpose of doing that. Under the Constitution counties, cities, and towns are recognized as having a certain amount of local autonomy. The Constitution sought to leave the Legislature the power of modifying, adding, or subtracting from the powers of municipal corporations; but such modification, addition, or subtraction of powers had to be general and could not be done by special legislation. That is to say, the Legislature could not pass an act specially directed at Salt Lake City or some other particular municipality. Section 29 was to prevent this being done indirectly by delegating to some commission certain powers which in their application might affect one or more cities specially. And, furthermore, to prevent all municipalities from being interfered with by outside agencies in the construction, management, or operation of their property. If any public agency, even including a city or town, were given the power to make, supervise, or interfere with a municipal improvement, municipal money, municipal property or effects of another city or town, it might be construed, to this extent,

to be a "special commission." The latter term may therefore take content, not so much from its intrinsic meaning, as from the nature of the powers and duties which are given to it. But a Metropolitan Water District appears to be designed not to interfere with municipal affairs but as a means to further them. But this section proceeds not only to prohibit the delegation to a special commission of the power to make, supervise, or interfere with municipal improvements, etc., but the power "to levy taxes," or "perform any municipal functions." When it comes to the levy of taxes or the performance of any municipal function, we must look to the Constitution of the agency as well as to the objects with which the Legislature sought to invest it in order to determine whether it is a "special commission." The powers which it may be given will be largely determinative of its Constitution. Certainly section 29 did not mean to prohibit any public agency, other then a municipal corporation, from performing any municipal function. If that were true, then any function which was ordinarily performed by a municipal corporation, being a municipal function, could not be performed by any other agency. Regulation of a street car system within the city is a municipal function. Because it is such, a public utility commission— a public agency—is not prohibited also from exercising control over urban street railway systems. Therefore while it may be possible to construe the term "special commission" as encompassing any public agency when it is given power to interfere with municipal property, improvements, or effects, when it comes to the prohibition against levying taxes or performing any municipal functions we must determine whether such agency is levying such taxes for the purpose of supplanting local government or is performing municipal functions in place of the local community. It is perhaps true that no public agency could be given power by the Legislature to levy taxes against property in a city or town for the purpose of performing the very municipal functions which said city or town was doing or could do.

Thus, it may be that section 29 prohibits an outside public agency from levying taxes for the performance of any municipal function or to prohibit it from performing any such municipal function as the city or town itself was doing or was capable of doing for that city or town—at least as far as its governmental powers are concerned. It is questionable whether an agency can be constitutionally created to go into a city and tax·and run a police department or even to do for that city alone the proprietary functions which said city was doing or was capable of doing. That is not the same as saying that an entity could not be formed to do that which the city could not do because of the magnitude or character of the project or because it was such a project which must necessarily serve more than one city. Thus, if an agency were constituted to aid and not to interfere with the performance of a municipal function, the case might well be different. An illustration is at hand in the very case under consideration. Any one of the cities or towns, perhaps all of them, included in the water district sought to be formed, cannot perhaps undertake to carry through a project of the magnitude which the Legislature had in mind when this act was passed. It may even require the combined resources of several of these water districts, and extraneous financial aid, to accomplish it. Yet the end to be accomplished, to wit, furnishing the inhabitants of each city or town with water, is in itself a municipal function. But the building of an immense project to serve many cities is in itself of a magnitude and character as to take it out of the category of municipal functioning. It is certainly not the ordinary function of a municipality in this state to construct immense engineering projects for the bringing of water from long distances. A "municipal function" is that which municipalities ordinarily do, or are capable or doing, or which they may by the Legislature be permitted to do. Supplying water to its inhabitants and building appropriate waterworks to do this is a municipal function. Engaging in some vast engineering project far beyond its financial

powers, and perhaps its legal powers, but ultimately designed to supply its inhabitants, together with inhabitants of other cities, with water may be something more than a municipal function. If the building of the Boulder Dam was necessary to give the city of Los Angeles a water supply, it might still be a national rather than a municipal function, not only on account of the legal complications due to its interstate nature, but because of the magnitude of the project being such as to be beyond the capabilities of even a city of that size, or even of a state.

While, therefore, it may be that no public agency could make, supervise, or interfere with the municipal property, or, perhaps, levy taxes or perform those municipal functions regardless of the levying of taxes in a city or town which such city or town was doing or was capable of doing—a species of municipal interference—yet section 29 was not meant to prohibit all public agencies other than municipalities from levying taxes within the area of a town, or from performing noninterfering municipal functions. The kind of public agency which was prevented from levying taxes or from performing municipal functions within the area of a city, town, or county was an agency designed to take over local government in whole or in part, and not an agency designed to aid or further municipal functioning. The Constitution did not mean to prohibit the Legislature from setting up an agency such as is authorized by this act, which, within its territorial limits, is empowered to aid such cities and towns to accomplish the end which they are empowered to accomplish when the means is beyond their capabilities. In a sense the powers which the water district enjoys, upon being created, are not delegated to it by the Legislature. The Legislature has not set up an entity and directly given it powers. It has permitted the people of the various cities and towns which are to be included in the territorial limits of the entity to set up such an entity which, when and if they do, may exercise certain powers. If the people choose not to set it up, no powers come into being.

The people themselves in the last analysis have control of the situation. By this we do not mean to imply that the Legislature could invest an entity, which it might permit to be created by a vote of the people, with unconstitutional powers. The feature that the people themselves have the choice as to whether the entity shall come into existence and thus only exercise its powers goes to the point that such entity can hardly be said to be a "special commission" to which the Legislature has delegated powers. When the inhabitants of each city or town themselves by majority vote set up the entity which may then exercise powers given it for so coming into existence, it is persuasive that such entity is not the type designed to interfere with the local self-government of such communities.

From what has been said it is to be concluded that a Metropolitan Water District is not a "special commission" to which has been delegated the power to make, supervise, or interfere with municipal property, or which as such special commission has power to levy taxes or to perform any municipal function. There may be a possible exception in the case where the Metropolitan Water District is permitted to use the streets of a town or city apparently without the consent of such town or city. Such act may be an interference with a municipal improvement. However, we are at this time not called upon to determine that question, and so merely call attention to it so as not to make the above statement too sweeping. The case of *Henshaw* v. *Foster*, 176 Cal. 507, 169 P. 82, 84, supports the above conclusion. In that case it was contended that the powers given to a water district to levy and collect taxes were a delegation to a "special commission" to levy and collect taxes and therefore contravened a section of the California Constitution (article 11, § 13) which prohibited, like our section 29, the Legislature from a delegation

"to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any way interfere with any county, city, town or municipal im-

provement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments or perform any municipal function whatever," etc.

It was held that the section was a general admonition against outside interference with local government. The court further held that the water district embracing several towns did not affect the right of local communities to govern themselves, stating:

"The corporate authority of such a district is the board of directors, and to that board is delegated the taxing power not in relation to matters of a purely local character in the included city or cities, but having reference to the affairs of the larger municipality, embracing within it the others of lesser areas. In this view of the statute there is no violation of section 13 because the Legislature does not delegate to the directors control or supervision of any of the purely local affairs of the cities, but by general law enables the inhabitants of a district including cities to form a district and to elect their own taxing board to raise the necessary funds for district purposes."

The second important question involved in this suit is to determine whether a Metropolitan Water District is a municipal corporation as meant by that phrase as used in section 4, art. 14, of the Constitution. Having concluded that it is not a special commission, does its exclusion from that class throw it over into the class of municipal corporations? The answer to that question, to my mind, is "no," because there may be many kinds of public entities other than special commissions or municipal corporations.

I would have more confidence in the application of the rule of ejusdem generis to the phrase "other municipal corporations" if it were not for the fact that in the named types of public corporations to which the phrase may be supposed only to apply is the school district. The functions of the school district are quite different and quite special as compared to the functions of a county, city, or town. If the phrase, "other municipal corporations," is taken to include only corporations of the types named in the language preceding it, it includes, among them, a corporation with very special powers, to wit, a school district. That being

the case, it might then be argued that it included other corporations with very special powers, such as Metropolitan Water Districts. But there are considerations more controlling in the determination of what meaning is to be given to the phrase "other municipal corporations."

The term "municipal" came from the Latin "Municipium," a town possessing the right of free Roman citizenship; that is, a free town. Webster's New International Dictionary defines "municipal" as that which enjoys local self-government, like that of a Roman municipium, said of a town, city, etc. A "municipal corporation" is defined by the same dictionary as a corporation created for the purposes of government. "Municipal" is defined by the New Standard Dictionary as, "Of or pertaining to a town or city, or its corporate or local government, hence pertaining to local self-government in general." "Municipality" is defined as a borough, town, or city possessed of a charter of incorporation conferring privileges of local government. A "municipal corporation" as defined in Baldwin's Second Edition of Bouvier's Law Dictionary is a "public corporation, created by government for political purposes, and having subordinate and local powers of legislation." This is the key to the meaning which the framers of the Constitution gave to this term. They had in mind what every intelligent layman has in mind when he thinks of a municipal corporation. The fundamental ingredient which differentiates a municipal corporation from other public agencies is the power to legislate and govern locally. The reader is referred to the excerpts from Black on Constitutional Law cited earlier in this opinion. All other agencies, whether special commissions or general commissions, administrative bodies, boards, departments, or bureaus do not have the power to make general rules of conduct for the guidance and the governing of inhabitants within a certain area in their transactions and conduct necessary for them to live together as a community. This power to prescribe for the conduct of its inhabitants in respect to their community life

and their relations and transactions with one another in the communities in which they live is essentially the same as the State Legislature itself enjoys in reference to the state at large. In fact, municipal corporations such as cities, towns, villages, boroughs, townships, or whatever they may be all act as governmental agencies for the state in local affairs of their own communities. This power to govern locally is quite different from the administrative powers enjoyed by boards, commissions, departments, bureaus, etc. A school district is on the border line. Its powers may be more administrative than governmental, although it has some governmental powers in that it governs a community in matters of education.

Entities which are designed to distribute water, power, gas, or to dispose of sewage, deal in services and, incidental to the distribution of services or of any kind of commodity, there must be regulation and administration; but this is not what we think of as government.

At the time the Constitution was adopted, the makers did not use the term "municipal corporation" as meaning some public entity which had the power to exercise what might also be a municipal function. That test might bring in almost every entity as a municipal corporation. We have heretofore shown that municipal functions have been classed as governmental and proprietary and that the proprietary came later than the governmental. If, at any given age in the history of a city or town, we look at the type of functions, it may at that time have had the right to exercise, and then call any of those functions a "municipal function," and then argue that any public entity which may exercise one or more of those functions is itself a municipal corporation, we give the phrase a too broad signification. For instance, if a territory is given the right to lay a tax for mosquito abatement and in regard to that activity is permitted to regulate, it could hardly be said to be a municipal corporation because it had that one function which a municipality itself might have. Likewise, I doubt whether a public en-

tity, given the power to construct or acquire water systems for the distribution of water to the communities within the area over which it is permitted to operate, is a municipal corporation because of the fact that it in the end accomplishes the same function which cities and towns in their evolution exercised, to wit, the supplying of water to inhabitants of the city or town. In short, I do not believe that the sole test as to whether a public entity is a municipal corporation lies in the fact that it may exercise some one or more municipal functions; that is, some one or more function which a county, city, or town may exercise.

I think the test of a "municipal corporation," as used in section 4, supra, and as intended by the framers of the Constitution, embraced the power to legislate in local matters and to exercise certain governmental functions such as were generally excised by counties, cities, and towns, and similar local governing units, as distinguished from "proprietary functions." The Metropolitan Water District does not exercise the governmental functions as that term is generally meant when applied to the activities of municipalities. It exercises proprietary functions purely. Its regulatory and administrative powers in regard to the water and water systems which it may own or operate are incidental to its proprietary functions. In this case, if the Metropolitan Water District is a municipal corporation, it will be held down to a 4 per cent debt limit, whereas the Legislature endeavored to give it a 10 per cent limit. As stated in the main opinion, we should approach the problem, not with the idea of seeing whether we can condemn it as unconstitutional, but whether we can hold it as constitutional. Consequently, all doubts should be resolved in favor of its constitutionality as a whole and as to its parts. For these reasons I concur with the main opinion that "other municipal corporation," as used in section 4, art. 14, of the Constitution, would not encompass a Metropolitan Water District and that, therefore, the debt limit would be 10 per cent rather than 4 per cent.

This opinion is borne out by the fact that I do not believe that the framers of the Constitution had in mind the desire to prevent any public corporation, whatever the necessity or desirability of the functions which it was designed to perform, from operating because of that particular debt limitation. Situations might be conceived of in the future where it may be necessary or desirable, in order adequately to cope with advancing or necessitous economic situations, to carry on in a magnitude not now thought of. The debt limitation is not necessarily related to the annual tax. A bond issue on low interest rates amortized over fifty years may be much less burdensome than a smaller one payable over twenty-five years, with a higher rate of interest, and a necessity of accomplishing the object which only the larger debt limit would permit might be quite imperative. If it were contemplated that the debt limit of 4 per cent was one which was in favor of the property within a city or town for all activities which a municipality might carry on, whether performed by the municipality or by some other agency not a municipality, then certainly no other public corporation could be given the power to increase that debt limit. The limitation on borrowing by another and different type of public corporation, even for functions which might be classed as municipal, was not intended to be included in that clause. I recognize the tenability of the argument that the Constitution by implication sought to protect the property owner from having to pay taxes levied for the purpose of paying off the principal of borrowed money in excess of 4 per cent of the value of his property, when such borrowing was done by the municipality in which he lived or by any other corporation which endeavored to borrow the money for such functions or activities as the municipality might have performed. But the debt limitation is one not given to specific property owners but is a limitation on the community at large.

As pointed out in the main opinion, a county might, while performing in a countrywide manner, do for a town in its

confines some of the same functions which the town was doing, and borrow for such activities, for which it would have an additional limit of 4 per cent. No other municipal corporation, whether superimposed on the same or on combined area could again do municipal functions and borrow to exceed 4 per cent; but another type of corporation not a special commission and not a municipal corporation could be granted power to increase the indebtedness more than 4 per cent.

I am of the opinion that the Legislature was not prohibited by section 31 of article 6 of the Constitution from permitting a county, city, town, or other political subdivision from lending its credit or subscribing to stock or bonds in aid of any public corporation formed to carry out the very purposes for which the county, city, town, etc., was organized to do. In other words, the section is directed against the practice which was prevalent at the time our Constitution was drafted amongst states and municipalities, to wit, that of aiding private ventures instituted for private profit but which it was thought would indirectly benefit and develop the particular local division loaning its credit. Where a city or other political subdivision of the state determined it could use another instrument of government or other political subdivision to accomplish a purpose which it was authorized to do, this section of the Constitution did not apply. Given a purpose or object within its powers, such as water or power development and distribution, the political subdivision which has such powers is not prohibited from loaning its credit to some other public agency when that public agency is one of the instrumentalities designed reasonably for the accomplishment or execution of such objects and purposes. For instance, if a political subdivision was empowered to borrow for the construction of waterworks, there is nothing in this section of the Constitution to prevent the Legislature from permitting it to join with other political subdivisions and, instead of borrowing directly, set up another instrumentality and loan its credit

so that that instrumentality might perform the service of constructing or distributing water. And there is nothing to prevent the Legislature from permitting such political subdivisions from loaning their credit to federal agencies, or in fact to agencies which may not either be considered as state or federal, if the acts which such agencies are constituted to do are those acts which are necessary and appropriate for the fulfillment of those powers, purposes, or objects which the political subdivision itself might directly do. The means for the accomplishment of an object, purpose, or power should be left flexible so that the appropriate type of instrument may be employed in accordance with the particular economic situation which the political subdivision finds itself confronted with. It is well known that municipalities in their earlier history may each by its own means and financial capacity adequately supply its own inhabitants with water, but in a state like ours where water is scarce, when towns develop into cities and cities into larger cities, situations come about where it is necessary to go quite far for a water supply, and in such cases it might be impossible for any of the cities, by themselves, in view of financial capabilities, to tap such source of supply. Then it becomes necessary for the various cities to combine their resources and in order to effect a combination of their financial resources and adminster them certain legal instrumentalities, such as separate corporations, separate public and even quasi-public entities, may have to be set up through which all of such cities, whether in the form of a combined association or in the form of a separate entity as a Metropolitan Water District, may function in combination. If the result to be accomplished is constitutional generally the means taken to accomplish that result will be constitutional. Here the result is a public purpose—the supplying cities with water—eminently constitutional. Unless some express prohibition stands in the way, the means for accomplishing it, where reasonably directed to that result, will not be declared unconstitutional.

It is not necessary now to stop to determine whether, in the loaning of its credit, it would have to include such contingent indebtedness or the cost of bonds or stocks which it might purchase within the debt limitation to which it was subject. That question is not before us. If and when a Metropolitan Water District attempts to act as surety for an amount which, if it is compelled to respond, will require it, together with other indebtedness, to create an indebtedness greater than its debt limitation, then that question may be decided. I think a Metropolitan Water District is a political subdivision of the state, but as long as it loans its credit or subscribes for stocks and bonds in agencies, at least of a public nature which are designed to carry through or accomplish its legitimate purposes, it may, as far as section 31, art. 6, of the Constitution, do so.

For the above reasons I concur in the prevailing opinion in holding that the socalled Metropolitan Water District Act does not contravene the Constitution in respect to any of the objections which have been urged against its constitutionality in this lawsuit.

MOFFAT, Justice (dissenting).

In saying that I dissent, I do not mean that the writ of mandate directing the recorder of Lehi City in his official capacity to cause the ordinance in question to be certified and transmitted to the chief executive officers of each of the cities named therein should be denied. Such a duty is merely a ministerial act, and in itself cannot affect any one's rights. Properly speaking, such is the only issue before this court. It is therein that the mischief of the procedure and the troublesome predicament this court is thrown into arises. The mere asking of a writ of mandate requiring a ministerial officer to perform an ordinary duty incident to his office pursuant to the action of the governing board of a city is one thing. The dropping into the lap of the court a complex and complicated statute of over a half

hundred sections and without definite issues or expressed or intended applications of the principles of law involved or any stated facts, circumstances, or conditions to which the law is proposed to be applied, and ask the court to pass upon the validity of the whole legal, and anticipated factual and contractual possible set-ups that may grow out of the situation, is quite another, and is not quite fair to the court and may result in embarrassment either to the water district, if and when organized, or to the court, when a crucial situation arises out of the complications which are sure to arise and later present themselves. No attempt is made to present or limit issues. The declaratory judgments act is not invoked.

Speaking in terms of economics or constructive development, if such were the character of the question before us, I should readily concur with the result the prevailing opinion reaches in this case. Such is not the matter to which I am called upon to give or withhold my assent. Important and fundamental constitutional limitations are drawn in question, by asking the court to declare upon constitutionality generally.

It is not my purpose to discuss all of the provisions of the Metropolitan Water District Law nor to attempt to indicate all of the provisions of the Constitution of Utah that I think may, or reasonably could, be drawn into consideration or affected by the possible applications of the law. I shall content myself with indicating some of the constitutional provisions and some of the statutory provisions that, in my opinion, seem to come into conflict.

Preliminary thereto I am of the opinion that the corporation authorized to be organized under the Metropolitan Water District Law is a "municipal corporation," not as defined, but as indicated by the powers granted and limitations imposed upon corporations so denominated by the Constitution of Utah.

"Corporations for municipal purposes shall not be created by special laws," Const. Utah, art. 11, § 5.

"The Legislature shall have no power to release or extinguish, in whole or in part, the indebtedness, liability or obligation of any corporation or person to the State, or to any municipal corporation therein," *Id.*, art. 6, § 27.

"The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects * * * or to perform any municipal functions," *Id.*, art. 6, § 29.

"The Legislature shall have no power to grant, or authorize any county or municipal authority to grant, any extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract has been entered into and performed in whole or in part, nor pay or authorize the payment of any claim hereafter created against the State, or any county or municipality of the State, under any agreement made without authority of law: Provided, That this section shall not apply to claims incurred by public officers in the execution of the laws of the State," *Id.*, art. 6, § 30.

"No municipal corporation shall, directly or indirectly, lease, sell, alien or dispose of any water works, water rights, or sources of water supply now, or hereafter to be owned or controlled by it; but all such water-works, water rights and sources of water supply now owned or hereafter to be acquired by any municipal corporation, shall be preserved, maintained and operated by it for supplying its inhabitants with water at reasonable charges: Provided, That nothing herein contained shall be construed to prevent any such municipal corporation from exchanging water-rights, or sources of water supply, for other water-rights or sources of water supply of equal value, and to be devoted in like manner to the public supply of its inhabitants." *Id.*, art. 11, § 6.

"The Legislature shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may, by law, vest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation." *Id.*, art. 13, § 5.

"All corporations or persons in this State, or doing business herein, shall be subject to taxation for State, County, School, Municipal or other purposes, on the real and personal property owned or used by them within the Territorial limits of the authority levying the tax." *Id.*, art. 13, § 10.

The Constitution of Utah provides for the organization, management, and operation of two classes of corporations,

viz., municipal corporations, and private corporations. For the Legislature or the courts by supplying a different adjective modifier to the word "corporation," and thereby bringing about a new hybrid entity that is neither municipal nor private within the purview of the terms of the Utah Constitution, appeals as a refinement. It is an easy method to avoid the plain terms of the State Constitution. If constitutional limitations may thus by a process of definition be eliminated, evaded, or evaporated out of the Constitution, the stabilizing purposes and restraints of Constitutions intended to tide the people over periods of emergency, excitement, or trouble until calm reflection may analyze and measure the needs, will cease to accomplish the purposes for which they are intended. Constitutions are drawn during sober hours, upon careful and painstaking consideration. It is beside the question to say the framers of the Constitution did not anticipate an offer of large governmental allowances or bounties for such beneficial purposes. It is certain, however, that the framers of the Constitution and the people who adopted it intended that certain fixed debt policies and limitations should be maintained.

Section 2 of chapter 110, Laws of Utah 1935, seems to lay a foundation for just such a process. It provides:

"As used herein the term 'municipality' or 'city' shall be deemed to mean and include any incorporated city or town of the state of Utah.

"The terms 'board' and 'board of directors' shall be deemed to refer to the directors created under section 6 hereof.

"The term 'public corporation' as used herein shall be deemed to mean and include the United States or any public agency thereof, this or any other state or any political district or subdivision thereof."

The more important question is the avoidance of the debt limitation provided by the Utah Constitution. Cases from other jurisdictions are of little help for the reason of difference in constitutional provisions. The prevailing opinion has made reference to some of such cases and provisions.

The Constitution of Utah is plain and the limitation certain. A comparison of the constitutional provisions with

the provisions of the Metropolitan Water District Law, chapter 110, Laws Utah 1935, convinces me that the law violates the constitutional provisions as to debt limitations and as to other provisions which need not here be discussed.

Except as to limitations as to sale of water and water rights, cities or municipalities have all the powers as to acquiring and supplying water to the inhabitants that Metropolitan Water Districts have. The law held to be valid by the prevailing opinion does violence to the debt limitation and taxing powers as limited and defined by the Constitution.

It is provided:

"No debt in excess of the taxes for the current year shall be created by any county or subdivision thereof, or by any school district therein, or by any city, town or village, or any subdivision thereof in this State; unless the proposition to create such debt, shall have been submitted to a vote of such qualified electors as shall have paid a property tax therein, in the year preceding such election, and a majority of those voting thereon shall have voted in favor of incurring such debt." *Id.*, § 3, art. 14.

Section 4 of the same article, among other things, provides:

"When authorized to create indebtedness as provided in section 3 of this Article, no county shall become indebted to an amount, including existing indebtedness exceeding two per centum. No city, town, school district or other *municipal corporation*, [Italics added] shall become indebted to an amount, including existing indebtedness, exceeding four per centum of the value of the taxable property therein; provided further, that any city of the first and second class when authorized as provided in Section three of the article, may be allowed to incur a larger indebtedness, not to exceed four per centum and any city of the third class, or town, not to exceed eight per centum additional, for supplying such city or town with water, artificial lights or sewers, when the works for supplying such water, light and sewers, shall be owned and controlled by the municipality."

Compare the following provisions of the Metropolitan Water District Law, chapter 110, Laws Utah 1935, with the foregoing:

"Such district may be formed of the territory included within the corporate boundaries of any one or more municipalities. * * *"

"Each such district when so incorporated shall be a separate and independent political corporate entity." Section 3.

"Any district incorporated as herein provided shall have power:

"(a) To have perpetual succession. * * *

"(d) To take by grant, purchase, bequest, devise or lease, and to hold, enjoy, *lease, sell, encumber, alien, or otherwise* dispose of, water, *water works, water rights and sources of water* supply. [Italics added.] * * *

"(g) To borrow money and incur indebtedness and to issue bonds or other evidence of such indebtedness; *Provided, however*, that no district incorporated hereunder shall incur indebtedness which, in the aggregate, shall exceed 10 per cent of the value of the taxable property therein. * * *

"(i) To levy and collect taxes for the purposes of carrying on the operations and paying the obligations of the district. * * *

"(k) To * * * secure, guarantee or become surety for the payment of any indebtedness, or the performance of any contract or other obligation that may be, or shall have been, incurred or entered into by any corporation in which the district shall have acquired shares of stock by subscription or otherwise. * * *" Section 18.

"All executive, administrative and ministerial powers may be by said board of directors delegated and redelegated. * * *

"If any district shall include the area of only one municipality then the board of directors shall consist of such number as the governing body of that municipality shall determine. * * *" Section 19.

"The board of directors of the district shall by resolution determine the amount of money necessary to be raised by taxation * * * and shall fix the rate of taxation. * * *" Section 35.

The foregoing is merely a brief outline of some provisions, a comparison of which forms part of the basis and reasons why I cannot concur with the views expressed in the prevailing opinion.

EPHRAIM HANSON, Justice.

I concur in the views expressed by Mr. Justice MOFFAT in his dissenting opinion.