460 P.2d 814

Robert A. BRANCH, a taxpayer, for himself and for all others similarly situated, Plaintiff and Respondent,

v.

SALT LAKE COUNTY SERVICE AREA NO. 2—COTTONWOOD HEIGHTS, a body corporate and politic, Paul Bywater, Donald Sawaya, and Don Antczak, as Trustees of said Service Area, Defendants and Appellants,

Salt Lake County Service Area No. 1, and Terracor, Inc., Intervening Defendants and Appellants.

No. 11696.

Supreme Court of Utah.

Nov. 3, 1969.

Don A. Stringham, Joel M. Allred, Larry M. Follett, Stephen G. Boyden, Salt Lake City, for appellants.

David E. Yocom, Salt Lake City, for respondent.

ELLETT, Justice:

This appeal involves the constitutionality of Title 17, Chapter 29, U.C.A.1953, as amended by Chapter 34, Laws of Utah, 1967, and Chapter 44, Laws of Utah, 1969. It is known as the "County Service Area Act" and was originally enacted as Chapter 28, Laws of Utah, 1957.

The original act in its entirety was held to be unconstitutional in the case of Carter v. Beaver County, etc., 16 Utah 2d 280, 399 P.2d 440. The law had been amended twice since "Carter" was decided; however, the trial judge thought he was bound by the decision and gave a summary judgment in favor of the plaintiff to the effect that the statute as amended is invalid

The original act was quite broad and provided that

Whenever an unincorporated area in a county requires one or more of the following extended services which are not provided on a county-wide basis within and without cities, including but not limited to the following: extended police protection; structural fire protection; culinary or irrigation water retail service; water conservation; local park, recreation or parkway facilities and services; cemeteries; public libraries; sewers, sewage and storm water treatment and disposal; flood control; garbage and refuse collection; street lighting; airports, planning and zoning; local streets and roads; curb, gutter and sidewalk construction and maintenance; mosquito abatement; health department services; hospital service; and their provision does not require the issuance of bonds or the issuance of other long term obligations, such services shall be supplied by the creation of a county service area.

In the Carter case this court thought the services permissible under the act were too many, and the Legislature attempted to and did correct that defect by its 1967 amendment wherein the words "within and without cities, including but not limited to the following" were deleted, so that, as the law now reads, the only services to be made available to a local area are specifically set out.

As a matter of fact, the Carter case limited its application by the following language:

In so declaring we desire it to be understood that this ruling applies to the instant controversy, and that apart from this, this decision is to have prospective and not retroactive effect.

We, therefore, are free to examine the amended statute upon its own merits without holding that the Carter case must be overruled in the event we think the act as at present drawn does not offend against the provisions of our constitution.

■ The first legal principle to be observed is that there is a presumption that

a statute is valid and constitutional; and one who questions it has the burden of convincing this court of its unconstitutionality. (See 16 C.J.S. Constitutional Law § 99 for the general law.)

This court in the case of Broadbent v. Gibson et al., 105 Utah 53, 140 P.2d 939, stated the law of this state as follows:

In determining constitutionality, statutes are presumed to be constitutional until the contrary is clearly shown. It is only when statutes manifestly infringe upon some constitutional provision that they can be declared void. Every reasonable presumption must be indulged in and every reasonable doubt resolved in favor of constitutionality.

The act in question provides for specified services when they are not furnished on a county-wide basis. This eliminates any possibility that the Service Area is impinging upon county rights or conflicting with county authority. The Service Area can only have services *which are not* furnished on a county-wide basis. The county gives to a service area the power to enjoy specified services which because of various reasons cannot be furnished to the county as a whole. The act was designed to permit people who reside in subdivisions outside of incorporated areas to have the same services which an incorporated city or town might have.

This court has on divers occasions ruled upon the constitutionality of provisions of our laws setting up service areas under specific names. For instance, in Tygesen v. Magna Water Co., et al., 119 Utah 274, 226 P.2d 127, an original proceeding was begun in this court to obtain a writ prohibiting the defendant from issuing and selling bonds to provide a source of culinary water for people living in an area set apart pursuant to Chapter 24, Laws of Utah, 1949. It was there contended that the statute was in conflict with the State Constitution. That statute read:

The board of county commissioners of each county in this state may hereafter establish in the manner hereinafter provided, one or more improvement districts in such county, and any district so created shall have authority through construction, purchase, gift or condemnation, or any combination thereof, to acquire and operate all or any part of the following or any combination thereof:

(1) Systems for the supply, treatment, and distribution of water; and

(2) System for the collection, treatment and disposition of sewage. No district created hereunder shall include within its boundaries any incorporated city or town or part thereof; and the boundaries of no district shall overlap the boundaries of any other district.

Mr. Tygesen asserted that the statute just quoted violated the provisions of Art. VI, Sec. 29, and Art. XI, Sec. 5 of the Constitu-

tion of Utah, because it delegated to a special commission, private corporation or association the power to assume, supervise or interfere with municipal functions, and had by special law created a corporation for municipal purposes.

The plaintiff in the instant case likewise claims that the Service Area Act conflicts with Art. VI, Sec. 29, of our Constitution, which reads as follows:

> The legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions.

In answering the contention made in "Tygesen," this court at pp. 279–280 of the Utah Reports, 226 P.2d at p. 130, held:

> It is plaintiff's contention that since under present day conditions counties have assumed in unincorporated cities or towns many of the functions of the incorporated cities or towns such as regulating police and fire protection, lighting streets, collecting garbage, surfacing and clearing streets and sidewalks and operating sewers that the functions of the counties are municipal functions the same as that of incorporated cities and towns and therefore the provisions of Art. VI, Sec. 29, forbidding the legislature to delegate to special commissions, private corporations

or associations the power to perform municipal functions applies to the functions which the counties have assumed.

Assuming, without conceding, that the term "municipal functions" as used in Art. VI, Sec. 29, applies to the functions of counties as well as cities and towns, nevertheless, plaintiff's contention is not tenable. The management and control of the Improvement Districts and its properties and effects are used by the Act vested in a Board of Trustees even though these districts are initiated by the county commission. Their operations will be separate and distinct from any of the functions assumed by the counties in those unincorporated cities or towns. Although these operations might be in the same territorial boundaries as the improvement districts, they will have no control over the property or effects of the counties or of the manner of the performance of any of the functions which the counties have assumed.

The case of Lehi City v. Meiling, etc., 87 Utah 237, 48 P.2d 530, was one wherein the Metropolitan Water District Act was assailed on constitutional grounds as is claimed in the instant case. There this court rejected the contention that the Act was in conflict with Art. VI, Sec. 29. This court also rejected the claim that the statute permitting an indebtedness in a sum of not to exceed ten per cent of the value of the taxable property of the district was in con-

flict with Art. XIV, Secs. 3 and 4 of our Constitution.[1]

The identical claim is made in the instant case that the debt incurred by service areas can cause the existing indebtedness to exceed the four per cent limitation. This court at pp. 257–258 of 87 Utah, 48 P.2d at p. 540, said:

> We are satisfied the Metropolitan Water district is not a subdivision of either a city, town, or county within the meaning of the word "subdivision" as used in the Constitution.

The other question is whether the Metropolitan Water District, if otherwise a valid organization, is a municipal corporation and hence subject to the 4 per cent limitation imposed on "other municipal corporations" mentioned in section 4. If such district is in the class of "other municipal corporations" referred to, it is then subject to the limitation of debt therein imposed. If it is not such a municipal corporation, and is otherwise lawfully created, it is not then subject to such limitation. If the district be a municipal corporation it would not necessarily follow that the act is void but the limitation of debt would be the constitutional limit of 4 per cent instead of the statutory 10

per cent. We think it is not a municipal corporation and is therefore not subject to the 4 per cent limitation imposed by the Constitution on municipal corporations.

We likewise think a County Service Area is not a municipal corporation and therefore the Act does not violate Art. XIV, Secs. 3 and 4 of our Constitution.

In the case of Patterick v. Carbon Water Conservancy District, 106 Utah 55, 145 P.2d 503 (1944), an attack was made upon the constitutionality of the Water Conservancy Act as enacted by Chap. 99, Laws of Utah 1941. This court held the Act to be constitutional, and that the Water Conservancy District was a quasi-municipal corporation for public purposes not organized under a special law. It further held that the legislature had the power to grant to the district powers not expressly inhibited by the Constitution, including the power of taxation.

In Freeman v. Stewart, 2 Utah 2d 319, 273 P.2d 174, an attack was made upon the constitutionality of a statute (Laws of Utah 1953, Chap. 29) which provided for the creation of improvement districts for water, sewer or sewage systems. Claims were there made like in the instant case that the Act violated the provisions of Art. XIII,

1. Section 3 provides that "No debt in excess of the taxes for the current year shall be created by any county or subdivision thereof, * * *." Section 4 limits the debt of counties and then provides "No city, town, school district or other municipal corporation, shall become indebted to an amount, including existing indebtedness, exceeding four per centum of the value of the taxable property therein, * * *."

Sec. 5,[2] and Art. XIV, Sec. 3 [3] and 4 [4] of the Utah Constitution.

This court at pages 321 and 322 of the Utah Reports, 273 P.2d at page 176 said:

> These contentions have been dealt with and give extensive consideration by this court in a number of cases in which we have held that improvement districts are a separate entity of government and not "municipal corporations" as contemplated by the Constitution. Therefore, the above constitutional provisions do not apply to the sanitary district involved in the instant case. [Citations omitted.]

The plaintiff herein also relies upon the language of this court found in the case of Backman v. Salt Lake County, 13 Utah 2d 412, 375 P.2d 756, wherein the Sports Arena Act was held to be offensive to the provisions of Art. VI, Sec. 29, of the Utah Constitution. The holding is obiter dictum as is shown by the language of the second paragraph of the decision which reads:

> At the outset it seems that this case is resolvable on but one procedural point: That the county did not follow the interdiction of the act with respect to initiating the election at the time and in the manner called for under the act. However, we feel constrained to discuss the points raised, with cautionary observations anent employment of the Declaratory Judgments Act in the future.

There is no question raised as to the propriety of the manner in which the defendants were created. The only attack made is upon the statute under which they were organized.

■ We are not convinced *clearly* or otherwise that the County Service Area Act, as amended, and as it applies to the facts of this case as revealed by the record, conflicts with any provision of our Constitution. The judgment of the district court is reversed and remanded with directions to enter judgment in accordance with this opinion.

Costs are awarded to appellants.

TUCKETT, J., concurs.

CROCKETT, Chief Justice (concurring in result).

I concur in the result of the opinion of Justice Ellett, limiting this decision to the particular facts presented in this case. But I am impelled to make some additional observations. I am appreciative of the dissent

---

2. This section prevents the legislature from imposing taxes upon a county, city or town or other municipal corporation.
3. This section provides that no debt in excess of the taxes for the current year shall be created by any county, or subdivision thereof.

4. This section limits the debts of counties to 2 per cent and of cities, towns, school districts and other municipal corporations to 4 per cent of the taxable property therein.

of Justice Callister in which he points out some of the difficulties in the County Service Area Act. I recognize that certain portions of the act, particularly that portion of Sec. 17–29–24 quoted in his opinion, may well be construed in some circumstances to pledge the general credit of the county, and consequently the property of all of the taxpayers therein, to ultimately pay for bonds issued. However, as I read the entire act, it deals with "a method whereby county service areas may be created," and how unincorporated areas in a county may obtain financing for specified services by issuing bonds under procedures provided in the act. At least one manner in which the act can fairly and reasonably be applied is for the obligation of the bonds issued to apply only to the particular service area.

It is my opinion that if this act were so interpreted and applied as to allow bonds issued by a particular service area to become general obligations of the county, and consequently of all of the other taxpayers thereof, it would have none of the advantages inherent in the status of special improvement districts, (See Lehi City v. Meiling cited in the main opinion) would run afoul of the county debt limit imposed by our Constitution, Sec. 3 of Art. XIV, and would be unconstitutional for other reasons. See Bigler et al. v. Greenwood et al., 123 Utah 60, 254 P.2d 843; Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).

But the foregoing is not the fact situation we are dealing with in this case. It seems to me that the fair and proper assumption as to the facts is that, as has been represented in several ways, the bonds are payable, as stated both in the "Notice of Adoption of a Proposal to Incur Indebtedness" and in the "Resolution of the Board of Trustees," from "general (ad valorem) taxes which will be levied without limitation of rate, or amount, upon all of the taxable property *within the boundaries of the service area. * * *"*

It is also significant that it is similarly represented in the recital contained in the ordinance establishing and organizing said Service Area, which contains this language in paragraph No. 4:

> * * * Stating that a combination of both a tax sufficient to pay for all such services * * * *will be levied annually upon all taxable property within such service area* and that a service charge may also be collected from the users of such services * * *.

In addition to the principles as to the presumptions of constitutionality, and the reluctance of courts to reach out and strike down statutes as being invalid unless necessary, it is also to be kept in mind that where there are two alternatives, one in which a statute can be interpreted and applied in a manner which will make it constitutional, and another which would make it unconstitutional, the former will be chosen. See

Donahue v. Warner Bros. Pictures Dist. Corp., 2 Utah 2d 256, 272 P.2d 177; Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435; Reynolds v. Milk Commission of Va., 163 Va. 957, 179 S.E. 507.

I think it only fair that the residents of the defendant Salt Lake County Service Area No. 2 who are interested, and any potential purchasers of bonds which may be issued, should be made aware of the difficulties in this act as pointed up by the dissent of Justice Callister, and of the apprehensions I have expressed. It is for this reason that I have set forth my additional views above, and that I desire it to be clearly understood that my concurrence is limited in that it is based upon my understanding that the obligation of the bonds of this service area can only be obligations upon said area with the approval of the taxpayers therein in a bond election as provided in the act. (All emphasis added.)

CALLISTER, Justice (dissenting).

Plaintiff initiated this declaratory judgment action to challenge the constitutionality of the County Service Area Act, Title 17, Chapter 29, U.C.A.1953, as amended 1967, 1969. Plaintiff, a taxpayer and resident of the area, prayed that the court permanently enjoin the defendant Service Area from levying and collecting taxes under the authority of the act and from proceeding, under a resolution by the trustees of the area, to call a public hearing on a proposal to incur an indebtedness of $600,000, which would not be payable in one year.

Both parties apparently contend that this court should make a carte blanc determination of the constitutionality of the entire act. This dissent is limited to the facts of this case and the applicable statutory provisions thereto.[1]

The defendant Service Area was created by an ordinance of Salt Lake County on July 26, 1967, to provide recreational facilities and services through the construction, operation and maintenance of extended local park and recreational facilities not now furnished by Salt Lake County in the Cottonwood Heights Area. The ordinance provided that the area may issue bonds or create long term obligations by any means available at law. The payment for services extended is to be by ad valorem property taxes established by the Board of Trustees and through the collection of service charges or fees or by a combination thereof. In 1968, the defend-

---

1. E. g., a proposition for the issue of revenue bonds is not involved in the instant fact situation; therefore, this court need not pass on the constitutionality of § 17–29–23 which restricts the right to vote for an issue of revenue bonds to qualified voters who have paid a property tax in the county or service area. See Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).

ant levied a five mill [2] property tax on all property in the service area and intends to levy and collect a tax in 1969.

By resolution the Trustees proceeded to call a public hearing on a proposal to incur an indebtedness by authorizing the issuance and sale of negotiable, coupon general obligation bonds in the principal amount of $600,000. The bonds are to be payable from general (ad valorem) taxes which will be levied without limitation of rate, or amount, upon all of the taxable property within the boundaries of the service area.[3] The purpose of the indebtedness is to defray the cost of the acquisition, construction or installation of a swimming pool and a site therefor with all necesary buildings and facilities, equipment and appurtenances which are deemed necessary to supply the recreational facilities and services for the service area.

The propriety of the judgment of the trial court is contingent on the applicability to the County Service Area Act of the following provisions of the Constitution of Utah:

(1) Does the act violate Sec. 29, Art. VI, i. e., has the legislature delegated to the service area the power to make, supervise or interfere with municipal improvements, money or property, to levy taxes, or to perform municipal functions?

(2) Does the act violate Sec. 5, Art. XIII, i. e., has the legislature conferred upon an unauthorized body the power to assess and collect taxes?

(3) Does the act violate Secs. 3 and 4 of Art. XIV, i. e., has the legislature attempted to evade the two per cent debt limitation imposed on counties, and has it permitted a county debt, not payable in one year, to be incurred without submitting such proposition to all qualified electors in the county?

Sec. 29, Art. VI, provides:

The *legislature shall not delegate to any special commission,* private corporation or association, *any power* to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, *to levy taxes,* to select a capitol site, or *to perform any municipal functions.* [Emphasis added.]

Appellants contend that this provision is inapplicable and that this court has consist-

---

2. § 17–29–13 establishes a five-mill limit except as provided in § 17–29–24.

3. See § 17–29–24: " * * * Regardless of any limitations contained elsewhere in the laws of Utah and this act including section 17–29–13 it shall be the duty of the board of trustees to cause taxes to be levied annually on all taxable property in the service area in the manner provided in section 17–29–13 but without regard to the limitation on rate therein set forth which will be fully sufficient (a) to pay the interest on such indebtedness as it falls due, and (b) to constitute a sinking fund for the payment of the principal thereof within the time for which such bonds are issued."

ently upheld legislation authorizing the creation of special taxing districts to perform local functions. Appellants concede that the act permits local-government type services, but assert that this is an appropriate, legislative solution for the needs of the unincorporated areas of the county. The act itself characterizes the nature of the services as "essential govenment functions," Sec. 17–29–26, and ascribes the authority of the legislature to act on the ground that the counties are instruments of state government, Sec. 17–29–2. Sec. 17–29–10.2 deems the service area a body corporate and politic and a quasi-municipal public corporation.

* * * a quasi-municipal corporation is a public agency created or authorized by the legislature to aid the state in, or to take charge of, some public or state work, other than community government, for the general welfare. * * *[4]

A municipal corporation is defined as a body politic and corporate, created to regulate and administer the internal or local concerns of the district embraced within its corporate limits in matters peculiar to such place and not common to the state at large. However, the municipal corporation also acts as the instrumentality of the state in exercising powers and duties not strictly local in nature, but which are in their essence state powers and obligations; and to this extent it is a mere agency of the state, aiding in the administration of state affairs insofar as matters affect the people residing within the local community in common with the inhabitants of the state.[5]

There are several states[6] with constitutional provisions similar to Sec. 29, Art. VI.

* * * It has been said that the whole object of such a constitutional provision was to prevent the state legislature from interfering with local government by the appointment of special commissions for the control of purely local matters. * * * The words "special commission" mean some body or association of individuals separate and distinct from the city government, and created for some individual or limited object not connected with the general administration of municipal affairs, but such words have also been held applicable to a general commission.[7] The prohibition is not on the creation of a special commission, private corporation or association, but instead of the delegation thereto of certain powers

4. 1 McQuillin, Municipal Corporations (3d Ed.) § 2.13, p. 467.
5. 1 McQuillin, Municipal Corporations (3d Ed.) § 1.108, pp. 390–391.
6. Wyoming, § 37, Art. III; Colorado, § 35, Art. V; Montana, § 36, Art. V; Pennsylvania, § 20, Art. III; South Dakota, § 26, Art. III; California, § 13, Art. XI.
7. Logan City v. Public Utilities Comm., 72 Utah 536, 271 P. 961 (1928).

relating to the control of municipal matters. · * * * usually the constitutional provision has been deemed applicable only to local affairs. * * *[8]

The validity of the County Service Area Act is dependent upon whether the services involved are a state affair, the control, administration of which may be delegated by the legislature either to a quasi-municipal corporation or to a unit of local government in its capacity as an instrumentality of the state. In Stewart v. City of Cheyenne,[9] the court observed that California and Montana have taken the position that their constitutional provisions apply only to purely local affairs and not to governmental functions. The court stated that Pennsylvania took a contrary position in Lighton v. Abington Tp.[10] In essence, purely local affairs are equated with the corporate or proprietary functions performed by local government in the states which take a restricted view of the meaning of "municipal affairs." This court adopted the view of the Pennsylvania Court in State Water Pollution Control Board v. Salt Lake City,[11] wherein this court held that the term "municipal" as used in Sec. 29, Art. VI, included any activity properly engaged in by a municipal corporation, whether governmental or proprietary. Therefore, the legislature's classification of the services as "essential governmental functions" does not make them a state affair, the performance of which may be delegated to a special commission or a quasi-municipal corporation.

We are further confronted with the issue of whether the counties are municipal corporations or whether they are mere instrumentalities of the state, whose functions may be delegated as the legislature elects. The majority opinion questions whether a county performs "municipal functions" as the term is used in Sec. 29, Art. VI.

Prior to statehood, this court defined a municipal corporation as "one investing the people of a place with the local government thereof."[12] In State ex rel. Wright v. Standford,[13] this court observed:

An examination into its early history will show the existence of a system of territorial subdivisions of the state into counties when the present constitution was adopted. At this early date the system of local self-government existed under the general laws of the territory, and there is no provision in the constitution which can be construed as impairing that right. * * *

8. 2 McQuillin, Municipal Corporations (1966 Rev.Vol.) § 4.11, pp. 30–32.
9. 60 Wyo. 497, 154 P.2d 355, 363 (1944).
10. 336 Pa. 345, 9 A.2d 609, 613.
11. 6 Utah 2d 247, 311 P.2d 370 (1957).

12. Salt Lake City v. Wagner, 2 Utah 400, 403 (1877–1880).
13. 24 Utah 148, 156–159, 66 P. 1061, 1062 (1901).

\* \* \* the constitution implies a right of local self-government to each county, and a right to establish a system of county government is expressly recognized and enjoined. The power is given to create the county government, not to administer to such a system when created. The right of the legislature was to provide for and put in action, not to run and operate, the machinery of the local government to the disenfranchisement of the people. \* \* \* [14]

A brief perusal of Title 17, Chapters 4 and 5 of U.C.A.1953, amply illustrates the powers of local government exercised by counties.

This court has held that the purpose of Sec. 29, Art. VI, was to hold inviolate the right of local self-government in respect to municipal improvements, money, property, effects, the levying of taxes, and the performance of municipal functions.[15]

In the instant action, is the defendant Service Area performing a municipal function? It is noteworthy that defendants have conceded that the act permits local-government-type services. As previously mentioned some courts confine the application of their constitutional provisions strictly to proprietary functions; nevertheless, they hold that the establishment of public parks and playgrounds is a municipal affair, a matter of local concern.[16]

This court in State Water Pollution Control Board v. Salt Lake City [17] declined to limit local affairs to merely proprietary functions and included essential governmental functions. The point of delineation between the two spheres was whether the function dealt specifically with a problem within the corporate territorial limits and which affected the inhabitants thereof. When the community so handles the problem that it affects others beyond the corporate limits or the inhabitants of the state generally, the matter becomes a state affair. Sec. 29, Art. VI, relates to the municipal corporation's independence of internal operation, and the proposed service facility of defendant Service Area falls within this ambit of local governmental control.

There is another aspect in regard to Sec. 29, Art. VI, which has never been adequately considered by this court. "The legislature shall not delegate to any special commission \* \* \* any power \* \* \* to levy taxes, \* \* \*."

14. Also see State ex rel. v. Eldredge, 27 Utah 477, 484–485, 76 P. 337 (1904).
15. Logan City v. Public Utilities Comm., note 7, supra; State Water Pollution Control Board v. Salt Lake City, note 11, supra.
16. Reagan v. City of Sausalito, 210 Cal. App.2d 618, 26 Cal.Rptr. 775 (1962); State ex rel. Gerry v. Edwards, 42 Mont. 135, 111 P. 734, 32 L.R.A.,N.S., 1078 (1910); 13 McQuillin, Municipal Corporations (3d Ed.) § 37.06, pp. 37–38.
17. Note 11, supra.

In Wilson v. School District of Philadelphia,[18] the court stated:

\* \* \* This section prohibits the delegation to any special commission of the Legislature's power to tax. The purpose of the provision was to protect against the exercise of the taxing power by officials not subject to the control of the people. This prohibition is not limited solely to municipal taxation. The words "to levy taxes" are not modified by the word "municipal," whereas the remaining clauses in this section are specifically so modified. This demonstrates the intention of the framers that no taxing power whatever, state or municipal, be delegated to any special appointive commission. This section becomes an express and emphatic limitation on the power of the Legislature to delegate to a nonelective board or commission the power to tax. \* \* \*

As stated by Mr. Justice Linn in Tranter v. Allegheny County Authority, 316 Pa. 65, 173 A. 289, the main purpose of article 3, § 20, was to correct the recognized economic mistake of taking the fiscal power away from the regular, legislative body and putting it in the hands of an independent body, organized for special purposes and not subject to the control of the people. \* \* \*

In Lighton v. Abington Tp.,[19] the court extended the constitutional prohibition of delegating powers to the township, as the governmental agent of the state.

\* \* \* As the constitution specifically deprives the state of power to delegate the management of the municipal property \* \* \* certainly the agent, the township cannot make such a delegation; the effect of the limitation on the principal would be destroyed if the agent could do what was prohibited. \* \* \*

In Evans v. West Norriton Tp. Municipal Authority,[20] the court clarified the application of the constitutional prohibition. The court observed that while it may not be clear whether an appointive instrumentality with unlimited power of taxation is a special commission under the constitutional provision, it is well established that "neither the Legislature nor a local, elected municipal body can delegate to any appointive body the unlimited power to levy taxes." However, the right to act as agent and perform the necessary administrative details is delegable. The court upheld the challenged Municipal Authorities Act, since the plan of construction of the improvement and the cost thereof, although initially determined by an appointive board, must be submitted and approved by the elected pub-

18. 328 Pa. 225, 195 A. 90, 113 A.L.R. 1401 (1937).
19. Note 10, supra, the case upon which this court relied in its interpretation of the term "municipal" in State Water Pollution Control Board v. Salt Lake City, note 11, supra.
20. 370 Pa. 150, 87 A.2d 474–479 (1952).

lic officials having the authority to levy taxes and perform municipal functions.

In the County Service Area, Sec. 17–29–13 provides that the board of trustees *shall* fix the rate of county service area taxes or charges or combination thereof and shall certify such rate to the board of county commissioners. Sec. 17–29–14 provides: "The tax as fixed by the board of trustees shall be levied and collected * * * by the county. * * *" These provisions totally remove the responsibility to levy taxes from the elected officials and confer the power on an appointive board. It should be observed that if the county commissioners act as the board of trustees, Sec. 17–29–10.1(1), there would be no violation of Sec. 29, Art. VI; nor would there be such a problem if the trustees were elected under subsection (4) of 17–29–10.1 and the matter qualified as a state affair. However, the application of subsection (4), which provides for the election of trustees, is limited solely to the fact situation where the county commissioners acts as the initial board of trustees. The statute is so constructed that if the trustees be appointed by the commissioners, either initially or subsquently, subsections (2) and (3), they may be neither removed during their term by the commissioners, nor may the appointive method be substituted with the elective procedure of subsection (4). The power

to levy taxes has been delegated by the state to an appointive commission beyond the control, supervision of the elected representatives of the people.

Sec. 17–29–10.2(1) confers upon the board of trustees: "The power to exercise all powers of eminent domain possessed by counties in Utah in the manner provided by law for the exercise of eminent domain power by counties."

In Stewart v. City of Cheyenne,[21] the Wyoming court adopted the Pennsylvania interpretation that the legislative power cannot be conferred upon an appointive body. The court observed that the power to condemn necessarily involves the power to incur indebtedness, which is the equivalent of the grant of the power of taxation. The court held that it must be left to the discretion of the authorities, elected by the people, the power to commence condemnation proceedings and submission to the people of the question of the issuance of bonds. The court stated that in regard to the exercise of municipal functions, administrative powers may be delegated, but under the constitutional provision no board or commission has the right to perform any municipal functions unless it is under the control of the regularly elected officials of the municipality.

In City of Whittier v. Dixon,[22] the court held that an act authorizing the

---

21. See note 9, supra.

22. 24 Cal.2d 664, 151 P.2d 5, 7, 153 A.L.R. 956 (1944).

appointment of a board of parking commissioners did not violate Sec. 13, Art. XI, of the California Constitution, prohibiting the delegation of any municipal function to a special commission. The court stated:

> * * * The parking place commissioners, however, are city officers appointed by the legislative body of the city when it elects to acquire parking places under the act, and are *removable at the pleasure* of that body. It is the local governing body and not the Legislature that confers upon the commission the right to exercise its function. * * * [Emphasis added.]

In City of Pasadena v. Chamberlain,[23] a case upon which this court extensively relied in Lehi City v. Meiling,[24] there was a contention that the Metropolitan Water District Act was unconstitutional as an attempt to delegate unlawfully the power of taxation to a special commission in violation of Sec. 13, Art. 11, of the Constitution of California. The court responded that in a sense the governing board of the district was comparable to the governing officials of a municipality. The court stated:

> " * * * The corporate authority of such a district is the board of directors, and to that board is delegated their taxing power not in relation to matters of purely local character in the included city or cities, but having reference to the affairs of the larger municipality embracing within it the others of lesser areas. In this view of the statute there is no violation of section 13, because the Legislature does not delegate to the directors control or supervision of any of the purely local affairs of the cities, but by general law enables the inhabitants of a region, including cities, to form a district and *elect* their own *taxing board* to raise the necessary funds for district purposes." [Emphasis added.]

In the instant action, the defendant Service Area, as constituted, violates the constitutional prohibition of Sec. 29, Art. VI, insofar as the powers to levy taxes and to perform municipal functions are delegated to a board not subordinated to the locally elected governmental authorities. (As previously mentioned, this dissent is confined to the instant fact situation, but in the interest of clarity the following is proffered: If the board were administering a state affair, it need not be subordinated to the local authorities; but if it were delegated the taxing power, the constitutional prohibition against a non-elective board exercising such power would be applicable.)

Art. XIII, Sec. 5, provides:

> The Legislature shall not impose taxes for the purpose of any county, city, town

---

23. 204 Cal. 653, 269 P. 639, 635 (1928).

24. 87 Utah 237, 48 P.2d 530 (1935).

or other municipal corporation, but may, by law, vest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation.

This provision reinforces the interpretation of Sec. 29, Art. VI, by this dissent. In State v. Standford,[25] Sec. 5, Art. XIII, was cited as one of the constitutional provisions which indicate that local self-government to the people of each county was intended by the framers of the Constitution. This court stated in that opinion that this provision not only limited local or county taxation to local county purposes, but it was also intended as a limitation upon the power of the Legislature to grant the right or impose the duty of creating a debt or levying a tax to any person or body other than the corporate authorities of the county.[26]

In Bailey v. Van Dyke,[27] this court observed that Sec. 5, Art. XIII, was not violated where the Legislature merely granted the legal power to a county to enter into a contract and to provide the funds or not, as its duly constituted officers may elect.

In Salt Lake County v. Salt Lake City,[28] it was established that Sec. 5, Art. XIII, was not violated by legislation compelling the counties and cities, as arms or agencies of state government, to assist the state in the payment of expenses incurred for a state affair, such as, the education of delinquent children. This court observed that the establishment of such schools was a function of the state and not of local government, unless the local government was authorized to exercise the function by the state government. This court explained that the local corporate bodies were in no way interested in the moral welfare of the delinquent children provided for in the juvenile court law of this state; rather, both the people who reside in the corporate boundaries as well as those who reside elsewhere are interested, and by reason of that fact the people of the state, through their government, may act in such matters.

The test as to "county purposes" is: Is it strictly for county uses, for which the county or its inhabitants alone would benefit, or is it for a purpose in which the entire state is concerned or will benefit? * * *[29]

States with similar constitutional provisions are listed in 46 A.L.R. pp. 612–613. In this annotation, Taxes—Corporate Purposes, it is stated at p. 707:

25. Note 13, supra.
26. See p. 161 of 24 Utah, 66 P. 1061.
27. 66 Utah 184, 192, 240 P. 454 (1925).
28. 42 Utah 548, 553–555, 134 P. 560 (1913).

29. In Re Hunter's Estate, 97 Colo. 279, 49 P.2d 1009, 1011, 101 A.L.R. 1202 (1935); the court interpreted § 7, Art. 10, of the Colorado Constitution, which is similar to § 5, Art. XIII, Utah Constitution.

Beyond all question the establishment and maintenance of public parks is a corporate purpose for which municipalities may be authorized to levy taxes under the constitutional provisions under consideration, and for which the legislature cannot compel a municipality to impose taxes. * * *[30]

In the instant action, the services to be rendered by defendant Service Area fall within the definition of county purposes. Under this court's construction of Sec. 5, Art. XIII, the Legislature may not grant the right or impose the duty of creating a debt or levying a tax for county purposes to any person or body other than the corporate authorities of the county.

A case in point which clearly illustrates the legal issues involved in the instant action is State ex rel. Gerry v. Edwards.[31] The Montana Legislature passed an act creating a board of park commissioners in all cities of the first class. The act provided that the park board shall make an estimate of the amount of money necessary to be raised for park purposes and shall certify the amount to the city council, and "thereupon it shall be the duty of the city council to cause the sum stated in said certificate to be included in the assessment of city taxes for said year." the court observed:

* * * When the council receives the certified estimate from the park board, it is compelled to raise the amount of funds necessary to meet the requirements of the board, or, in other words, the city council is the mere agent of the board for the purpose of collecting the tax.

The court cited Sec. 4, Art. 12, of the Constitution of Montana, which is substantially similar to Sec. 5, Art. XIII, and queried whether the board of park commissioners was one of the "corporate authorities" included within the constitutional provision. The court stated:

The framers of the Constitution must have understood the rule of law, which is universally recognized, that the exercise of the taxing power is the exercise of legislative authority; and, when they determined that the power to levy taxes for city purposes should be exercised only by the corporate authorities of the city, they must have meant by the "corporate authorities" those who constitute the legislative branch of the city government—at this time, the mayor and city council. * * *

The court asserted that the purpose of Sec. 4, Art. 12, was to secure to the people, local self-government and that it was the public policy of the state to confide to the citizens of municipalities the right of local self-control to the upmost extent compatible with an orderly system of state government. The court observed that it

30. Also see supplemental annotation in 106 A.L.R. 917–918.

31. 42 Mont. 135, 111 P. 734, 735–738, 32 L.R.A.,N.S., 1078 (1910).

was necessary to determine whether the purpose sought to be promoted by the creation of the park board was one of private concern to the city, as distinguished from one in which the people of the state have an interest in common with the citizens of Helena. The court stated:

> * * * We fail to see what general interest the people of this state as a whole have in the public parks of the city of Helena. Primarily at least, such parks are for the adornment of the city and for the pleasure and recreation of its people. While visitors may enjoy them freely as a matter of right, yet if that bare, intangible right is sufficient to create the public interest of the entire people of the state in these parks, then it is difficult to understand what is meant by the purely local and private concerns of a city. * * *

The court continued:

> Our conclusion is that this park board is not a corporate authority of the city of Helena, within the meaning of the Constitution; that the purpose it was created to promote is a purely local or private concern of the city; and that in bestowing upon individuals in whose selection the people have had no voice the power to levy taxes upon the people who must pay them, and in attempting to coerce these people against their will to pay such taxes, the Legislature not

only violated the provisions of section 4 of article 12, above, but did equal violence to the theory of local self-government which has been established in this state as one of the fundamental principles of our government.

When Sec. 29, Art. VI, and Sec. 5, Art. XIII, are correlated, certain fundamental principles emerge: The right of local self-government is guaranteed, and, although the exercise of municipal functions may be delegated, local government must retain control and responsibility for local affairs. If a matter is a state affair (a problem or interest which involves or affects the people beyond the corporate territorial boundaries), the state has an option to delegate the function to local authorities, as agencies or instruments of the state, or to establish a quasi-municipal corporation to administer the state function. The taxing power may not be delegated to an independent, appointive body organized for special purposes, but must be retained and exercised by the elected legislative body, whether state or local, which is subject to the control of the people. " * * * How sound and unchallengeable this latter ground is, must be evident to all those who recall that 'Taxation without representation' was the battle cry that precipitated the Revolution." [32]

In the instant action, the proposed indebtedness is to be financed by general

---

32. Evans v. West Norriton Tp. Municipal Authority, note 20, supra.

obligation bonds, payable from general (ad valorem) taxes to be levied upon all the taxable property in the service area. Since, in the opinion of this dissent, the defendant Service Area does not qualify as a quasi-municipal corporation administering a state affair, the debt limitation for counties in Sec. 4, Art. XIV, of the Constitution, is applicable. Sec. 17–29–21 provides that if an indebtedness be county-wide, the two per cent debt limitation applies. However, this section excludes for the purpose of computation of county-wide indebtedness, any indebtedness payable from revenues to be derived from the operation of the facilities or from taxes on property within the area for benefits conferred thereon or services rendered.

Insofar as the indebtedness is payable solely from the revenues of the facility itself and not from general taxes, the exclusion from the debt limitation qualifies under the "special fund doctrine."[33] Furthermore, the exclusion is applicable, if the term "taxes" be construed as a special assessment, the amount of which is determined by the benefit each parcel will receive from the improvement. "* * * a special improvement tax levied only as a lien against the adjoining real property is not a county debt. * * *"[34] When the indebtedness, however, is payable by general ad valorem taxes levied upon property in the area, the constitutional debt limitation is applicable, whether the debt be county-wide or not. Any other interpretation would permit the avoidance of the debt limitation by the simple expediency of dividing the county into two or more areas, prior to the incurrence of any indebtedness, payable by ad valorem taxes.

Sec. 17–29–24 provides:

\* \* \* All bonds of the service area which are not payable solely from the revenues of the service area or from taxes proportionately levied on property benefited by the improvement shall be the general obligations of the county and the full faith, credit and resources of the county shall be pledged for the payment thereof * * *.

In the instant action, since the proposed indebtedness is payable neither from revenues derived from the facility nor from special improvement assessments, the full faith of the county is pledged. In a determination of whether an indebtedness is a "debt" within the constitutional limitation, an important factor is whether the credit of the county is extended or the county can be coerced into levying a tax to pay the obligation, either directly or indirectly.[35] Under the facts of this case, the proposed indebtedness must comport

33. Utah Power and Light Co. v. Provo City, 94 Utah 203, 74 P.2d 1191 (1937).
34. Pearson v. Salt Lake County, 9 Utah 2d 388, 393, 346 P.2d 155 (1959).

35. See Barlow v. Clearfield City Corp., 1 Utah 2d 419, 426–427, 268 P.2d 682 (1954).

with Secs. 3 and 4 of Art. XIV of the Constitution of Utah

HENRIOD, Justice (dissenting).

I dissent along with Mr. Justice Callister, agreeing with what he said. It appears to me that the main opinion condones the delegation *to a nonelective* body, the power to require the taxpayer to pay an additional five mills tax, without any power, or privilege, if you please, to question the wisdom, practicability, need or anything else of the project either at the polls or anywhere else. The opinion provides the knife with which to whittle away another right (and a great big one) of the citizenry to control the public purse-strings.

This case was presented in haste. It is not an adversary proceeding. I am convinced that both sides seek the identical result to insure a broker against more difficult and less profitable marketing opportunities.[1] There is considerable straw here which the main opinion destroys, and considerable meat upon which it should have chewed.

This case was never placed on a regular calendar for argument. It was presented and decided in haste, I believe, and prematurely, on July 30, 1969, by minute entry, which explained that the opinion would come later. At the time of deciding this case by a majority of the court on July 30, 1969, the Record had not been filed in this Court, and was not filed until August 1, 1969. There was never a hearing had in open court at which a taxpayer could have listened to the arguments pro and con. In my view the procedure indulged here may have been improvident enough to justify a withdrawal of the opinion and permit it to be processed as other cases are processed under the rules.

---

1. It is significant that the respondent's printed brief was filed three days after that of appellant.