Argued October 30, reversed and remanded for vacation of the injunction December 3, 1973, petition for rehearing denied January 3, petition for review denied February 20, 1974

# OREGON GAME FOWL BREEDERS ASSOCIATION, *Respondent–Cross-Appellant,* DUNCAN ET AL, *Respondents, v.* SMITH ET AL (No. 72-324-E), *Appellants–Cross-Respondents.*

516 P2d 499

488

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellants–cross-respondents. With him on the briefs were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Donald F. Bach,* Eugene, argued the cause for respondent–cross-appellant Oregon Game Fowl Breeders Association. With him on the brief was Charles O. Porter, Eugene.

No appearance by respondents James Duncan, Earlene Duncan, Garland Stone and Myrna Stone.

Before SCHWAB, Chief Judge, and LANGTRY and TANZER, Judges.

LANGTRY, J.

This is a declaratory judgment proceeding. Plaintiffs allege they are involved in the business of breeding, raising and selling game fowl. Defendants are the District Attorney of Jackson County and the Attorney General of the State of Oregon.

In their first amended complaint plaintiffs asked:

"1. That declaratory judgment be rendered and entered declaring:

"(a) That Chapter 596 of Oregon Laws 1971 and Section 226 of Chapter 743, Oregon Laws 1971 are void and of no force and effect because they provide different penalties for the same crime, and,

"(b) That Chapter 596, Oregon Laws 1971, is void as unconstitutional in that subparagraph (8) providing for an exception for animals in transit is arbitrary and capricious and in violation of the Fourteenth Amendment of the United States Constitution.

"(c) That game cock fighting is exempt from prosecution under both Chapter 596 Oregon Laws 1971 and Sec. 226 of Chapter 743 Oregon Laws 1971 in that in subparagraph (6) of Section 1 of Chapter 596 because such fighting is in fact of ancient tradition and is essential for the proper breeding and continued trafficking in game fowl.

"(d) That game cock contests do not constitute cruelty to animals under either statute because of the inherent nature and instincts of game fowl.

"2. That the defendants be enjoined from prosecuting plaintiffs and any other persons similarly situated for causing game cocks to become involved in combat with each other."

Oregon Laws 1971, ch 596 is codified as ORS 167.860, and Oregon Laws 1971, ch 743, § 226 is ORS 167.850.

The trial court rendered a declaratory judgment

which will be discussed below and issued an injunction against enforcement of the above statutes against plaintiffs by the defendants. Defendants appeal.

A threshold question not raised on appeal is whether a declaratory judgment proceeding may properly be utilized for the purpose of the plaintiffs. *Cf.* our consideration of the similar problems presented in *Cornelius v. City of Ashland*, 12 Or App 181, 506 P2d 182, Sup Ct *review denied* (1973). Inasmuch as the question has not been raised on appeal, we proceed to decide the case on its merits.

At trial the evidence established that there exists a world-wide sport of cockfighting in which game fowl matched by weight, armed with sharp steel gaffs attached to their feet, are placed in a "pit" where they engage in combat.

Plaintiffs do not raise fowl for the purpose of engaging them in this sport for themselves, rather they sell their birds to others who in turn engage the birds in combat. Plaintiffs testified that most of their sales were out of state. However, for the purpose of maintaining the purity of their breeding stock, plaintiffs testified they must at times engage their birds in the described combat to determine if they have a fighting instinct.

The trial court rendered the following decree:

"The Court wherefore [sic] renders and enters a declaratory judgment declaring:

"1. That game cock fighting is prohibited under the provisions of ORS 167.850 and ORS 167.860.

"2. That ORS 167.860 is not unconstitutional because of the exceptions provided in sub-section 8 thereof.

"3. That ORS 167.850 and ORS 167.860 are unconstitutional in that they provide different penalties for the same prohibited conduct."

Defendants Smith and Johnson appeal from that portion of the decree declaring the two statutes unconstitutional. Plaintiff Oregon Game Fowl Breeders Association cross-appeals from that portion of the decree that rejects plaintiffs' three other contentions ((b), (c) and (d) of their complaint).

1. (1). The constitutionality of ORS 167.850 and ORS 167.860.

ORS 167.850 provides:

"(1) A person commits the crime of cruelty to animals if, except as otherwise authorized by law, he intentionally or recklessly:

"(a) Subjects any animal under human custody or control to cruel mistreatment; or

"(b) Subjects any animal under his custody or control to cruel neglect; or

"(c) Kills without legal privilege any animal under the custody or control of another.

"(2) As used in this section, 'animal' includes birds.

"(3) Cruelty to animals is a Class B misdemeanor."

ORS 167.860 provides:

"(1) As used in this section, 'animal' means any mammal, bird, reptile or amphibian.

"(2) Any person who overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, cruelly beats, mutilates or cruelly kills, or causes or procures such cruel treatment of any animal, or who, having the charge of or custody of any animal as owner, or otherwise, inflicts cruelty upon the ani-

mal, shall, upon conviction, be punished for every such offense by imprisonment in the county jail not exceeding 60 days, or by a fine not exceeding $100, or both.

"(3) Every owner or person having the charge or custody of any animal, who cruelly drives or works the animal when unfit for labor, or cruelly abandons the animal, or carries or causes the animal to be carried in or upon any vehicle or otherwise, in a cruel, inhuman manner, or knowingly or wilfully authorizes or permits the animal to be subjected to torture, suffering, or cruelty of any kind, shall be punished for each and every offense in the manner provided in subsection (2) of this section.

"(4) Except in the case of an emergency, every owner or person having the charge or custody of any animal, who deprives such animal of necessary and adequate food and drink for more than 36 hours, shall be punished for each and every offense in the manner provided in subsection (2) of this section.

"* * * * * *

"(6) The dehorning of cattle or the docking of horses or sheep, or any other practice of good livestock husbandry, is not a violation of this section.

"* * * * * *

"(8) The provisions of this section shall not apply to the treatment of animals in transit by a common carrier."

The basis for the trial court's ruling was that the two statutes provide different penalties for the same prohibited conduct. *State of Oregon v. Pirkey,* 203 Or 697, 281 P2d 698 (1955).

ORS 167.860 with the exception of certain language in subsection (3) thereof requires no culpable mental state. The penalty provided for in ORS 167.860 indicates that the offense is an unclassified misdemeanor. ORS 161.555 (1) (d). ORS 167.860 is not a

part of the Oregon Criminal Code, but ORS 167.850 is. ORS 161.005.

Under ORS 161.105 (2) an offense "defined by a statute outside the Oregon Criminal Code that requires no culpable mental state constitutes a violation." A violation may be punished by a fine and/or forfeiture or other civil penalty, and gives rise to no "legal disadvantage based on conviction of a crime." ORS 161.565. However, a violation of ORS 167.860 may be prosecuted under allegations and proof of culpability and, if convicted, the defendant may be sentenced as an unclassified misdemeanant. ORS 161.105 (3).

The language, "[s]ubjects any animal * * * to cruel mistreatment * * *," ORS 167.850 (1) (a), covers the same acts as ORS 167.860 (2), "inflicts cruelty upon the animal* * *." Webster's New Twentieth Century Dictionary 1813 (unabridged 2d ed 1964) defines "subject" when used as a verb as meaning "to cause to undergo or experience some action or treatment * * *." "Cruel mistreatment" encompasses in general language the specific acts of cruelty enumerated in ORS 167.860 (2), which also uses general language prohibiting cruelty as well as the specific actions enumerated. Thus, ORS 167.850 (1) (a) prohibits the intentional or reckless subjection of an animal to cruel mistreatment. ORS 167.860 (2) prohibits the criminally negligent subjection of an animal to the same "cruel mistreatment" and provides for a lesser penalty. Or it also may be considered to create strict liability for the doing of such acts. A similar analysis shows the same relationship between ORS 167.850 (1) (b) and ORS 167.860 (4). (These subsections relate to cruel neglect of animals.)

ORS 167.860 (3) covers two separate situations:

"Every owner or person having the charge or custody of any animal, who cruelly drives or works the animal when unfit for labor, or cruelly abandons the animal, or carries or causes the animal to be carried in or upon any vehicle or otherwise, in a cruel, inhuman manner, or *knowingly or wilfully authorizes or permits the animal to be subjected to torture, suffering, or cruelty of any kind,* shall be punished for each and every offense in the manner provided in subsection (2) of this section." (Emphasis supplied.)

The nonitalicized portion is a further enunciation of acts covered both by ORS 167.860 (2) and ORS 167.850 (1)(a), and has the same relationship to ORS 167.850 (1) (a) as ORS 167.860 (2). The italicized portion prohibits a person from knowingly or wilfully authorizing or permitting another to subject an animal to such cruel mistreatment. This is behavior not specifically covered by ORS 167.850. Likewise, ORS 167.850 (1) (c) prohibits behavior not specifically covered by ORS 167.860.

The trial court, relying on *State of Oregon v. Pirkey,* 203 Or 697, 281 P2d 698 (1955), held the two statutes unconstitutional as providing different penalties for the same prohibited conduct. Regardless of other reasons, unnecessary to delineate here, as to why *Pirkey* may be inapplicable to the statutes involved, we think the analysis above shows that the two statutes do not provide different penalties for the same offense; they differentiate penalties on the basis of the culpable mental state of the actor, and in some respects the acts prohibited are different. The relationship of the two statutes is more in the nature of establishing different degrees of the same crime though each

statute reaches behavior not reached by the other. There being a reasonable basis for the distinction made by the statutes, they are not unconstitutional. *State v. Dumont,* 3 Or App 189, 193, 471 P2d 847 (1970).

■ (2). Is ORS 167.860 unconstitutional because of the exception created by subsection (8) thereof?

The exception created by ORS 167.860 (8) is apparent recognition of the problems faced by shippers of animals. The effect of the exception is to exempt the shippers (those having custody or control) from their otherwise negligent, cruel mistreatment of animals under ORS 167.860. Because the exception does not apply to ORS 167.850, it does not exempt shippers from any intentional or reckless, cruel mistreatment. This exemption has a rational basis and is not grounds for declaring ORS 167.860 unconstitutional.[1]

---

[1] Plaintiff relies upon cases from other jurisdictions which supply some support for its argument. Thus, in Mikell v. Henderson, 63 So 2d 508 (Fla 1953), the Florida court held that, if rooster fighting were prohibited by the general Florida cruelty to animals statute (similar to ORS 167.860), an exception created for the shipment of poultry on steamboats or other vessels would render the prohibition unconstitutional as a denial of the equal protection of the laws because an owner could allow roosters to fight on board ship but not on dry land. Plaintiff contends the exception created in ORS 167.860 (8),

"The provisions of this section shall not apply to the treatment of animals in transit by a common carrier,"

should have the same effect. As we have noted in text, this exception does not apply to ORS 167.850. Because of this difference, the Florida case, if we were to agree with it, is not in point.

Plaintiff also cites Jeffrey Mfg. Co. v. Blagg, 235 US 571, 35 S Ct 167, 59 L Ed 364 (1915), and Sproles v. Binford, 286 US 374, 52 S Ct 581, 76 L Ed 1167 (1932), for the proposition that

"[w]hen there is no basis in reason and sound public policy for legislative classifications, the discrimination is arbitrary and the attempted classification is beyond legislative authority, and void as a violation of the Fourteenth Amendment * * *."

We find in text that the classification made by the Oregon statutes is rational and not arbitrary.

■ (3). Is cockfighting exempt from the provisions of ORS 167.860 because it is a practice of good livestock husbandry?

ORS 167.860 (6) provides:

"The dehorning of cattle or the docking of horses or sheep, or any other practice of good livestock husbandry, is not a violation of this section."

Without going into the question of whether game fowl are "livestock," plaintiff's argument on this point appears to have little merit. The key question is whether cockfighting constitutes "cruel mistreatment." If it does, then the practice itself being against the law, similar practice necessary to breed birds suitable only for this particular use could not logically qualify as "good livestock husbandry."

■ (4). Is cockfighting prohibited by either ORS 167.850 or 167.860?

From the records of the Senate Committee that passed upon the bill that became ORS 167.850, it appears that subsection (2) thereof,

"As used in this section, 'animal' includes birds,"

was added *specifically* for the purpose of including cockfighting within the scope of the act. Senate Criminal Law and Procedure Committee Minutes, March 16, 1971, p 6, March 22, 1971, p 6. ORS 167.860 (1) also includes birds within the meaning of the word "animals."

Courts in other jurisdictions have often been reluctant to hold that cockfighting is prohibited by a general cruelty to animals statute. Examples of such decisions are *State v. Stockton*, 85 Ariz 153, 333 P2d 735 (1958); *State v. Buford*, 65 NM 51, 331 P2d 1110, 82 ALR2d 787 (1958); and *Lock v. Falkenstine*, 380 P2d

278 (Okla Cr App 1963). In all of those cases the courts noted that if the legislatures wanted to prohibit cockfighting they could specifically do so. The court in one of them noted that a majority of states do specifically prohibit cockfighting. In none of those cases was a legislative history parallel to that of ORS 167.850 mentioned, but the absence of it was mentioned in one.

The Oregon statutes in question specifically include birds as animals. Both Oregon statutes are written in terms that prohibit all cruel mistreatment except that "otherwise authorized by law," ORS 167.850 (1), or as specifically exempted by ORS 167.860 (6) and (8). There appears to be no basis for concluding that the legislature in enacting either statute did not intend to include "cockfighting." To require that the legislature specifically outlaw cockfighting despite the fact that cockfighting can be construed as prohibited by the cruelty to animals statutes would be to invite proliferation of statutes, which, in turn, often leads to absurd results. *Cf. State v. Jim/White,* 13 Or App 201, 508 P2d 462, Sup Ct *review denied* (1973).

We conclude that the injunction against enforcement of the questioned statutes which resulted from the trial court's declaratory judgment was erroneously entered.

Reversed and remanded for vacation of the injunction.